**Jacqueline (Kelley) KELLAM, Carmen (Soriano) Ergenzinger, and Patricia Opdyke, Plaintiffs,**

v.

**SNELLING PERSONNEL SERVICES, a/k/a Snelling Temporaries; and Thomas Cahall, Jr., individually, Defendants.**

Civ. A. No. 93–591–JLL.

United States District Court, D. Delaware.

Oct. 17, 1994.

William D. Fletcher, Jr., Douglas B. Catts, and Noel E. Primos of Schmittinger & Rodriguez, P.A., Dover, DE, for plaintiffs.

David H. Williams and Maureen M. Blanding of Morris, James, Hitchens & Williams, Wilmington, DE, for defendants.

1. Title VII also covers labor organizations, as defined, but they are not involved in this case.

**MEMORANDUM OPINION**

LATCHUM, Senior District Judge.

### I. Procedural History

During the time relevant to this action defendant Snelling Personnel Services a/k/a Snelling Temporaries ("Snelling Personnel"), was a sole proprietorship owned by defendant Thomas Cahall, Jr. ("Cahall"), and was operated as an employment agency. Cahall was a franchisee of Snelling Personnel Services, Inc. a/k/a/ Snelling & Snelling, Inc. ("Snelling & Snelling"), also originally named as a defendant. Plaintiffs Jacqueline Kellam, Carmen Ergenzinger, and Patricia Opdyke were employed as permanent staff by Snelling Personnel as personnel employment counselors, and as an administrative assistant/receptionist respectively. The plaintiffs filed this suit pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.*, on December 27, 1992, alleging sexual harassment.

This Court ordered the parties to take discovery on the limited issue of subject matter jurisdiction. (Docket Item ["D.I."] 21.) Following completion of discovery, Snelling & Snelling was dismissed from the case by stipulation and order, (D.I. 35), leaving Snelling Personnel and Cahall as the only remaining defendants. The parties submitted a Stipulation of Facts and an Appendix thereto on August 15, 1994 and August 16, 1994, respectively. Presently before the Court is defendants' joint motion to dismiss for lack of subject matter jurisdiction. (D.I. 9.)

### II. Introduction

Title VII prohibits both "employers" and "employment agencies," as defined by the statute, from engaging in certain prohibited "employment practices." [1] The plaintiffs argue that the defendants are covered by one or more of these prohibitions, and the defendants argue that their actions fall outside of the scope of the statute. The parties' jurisdictional arguments will be summarized in the paragraph that follows.

The plaintiffs, uncontested employees of the defendants, argue that this Court has

*See* 42 U.S.C. § 2000e(d) (1988) (defining labor organizations).

subject matter jurisdiction on two grounds. First, that the defendants are "employers" within the meaning of Title VII because their use of temporary workers causes them to surpass the statutorily imposed threshold number of fifteen employees.[2] In the alternative, they argue that the defendants as an "employment agency" are subject to Title VII because the statute requires no threshold number of employees before the prohibited employment practices applicable to employment agencies become effective.[3] The defendants argue first, that the temporary workers should not be counted as employees in calculating whether the defendants meet the threshold number for purposes of being an "employer," and second, that even conceding their status as an employment agency, they are not covered by Title VII for the claims asserted.

### III. Discussion

#### A. "Employee" For Purposes Of Title VII Is Defined By Common–Law Agency Principles.

■ During the time relevant to this action the defendants employed between six to eight permanent staff members which, it is conceded, are "employees" within the meaning of Title VII. (D.I. 36 at ¶¶ 4–6.) The defendants maintained a list of temporary workers available for assignment that consisted of more than a thousand individuals. (*Id.* at ¶ 7.) The plaintiffs argue that the defendants' temporary workers are also employees under Title VII. Whether a person is an employee under Title VII is a question of federal law, and as such is governed by the applicable federal statute and case law. *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir.1981); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith*, 611 F.Supp.

344, 347 (S.D.N.Y.1984), *aff'd sub nom. Aharnare v. Merrill Lynch*, 770 F.2d 157 (2d Cir.1985). In a case involving the construction of a statute "[the court's] starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). Unfortunately, a reading of Title VII is unavailing. After defining an "employer" as "a person ... who has fifteen or more employees ...," the statute, with remarkable circularity, defines an employee as "an individual who is employed by an employer...." 42 U.S.C. § 2000e(b), (f) (1988).

■ Where a federal statute provides such an unhelpful definition of the term "employee," the Supreme Court has directed that the common-law principles of agency shall apply in determining who is an employee. *Nationwide Mut. Ins. Co. v. Darden*, —— U.S. ——, ——, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992).[4] Although *Darden* dealt with how the term "employee" was to be construed in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(6) (1988), its reasoning was in no way limited to ERISA; moreover, the language interpreted by the Supreme Court in that case, "any individual employed by an employer," is essentially identical to the language before this Court: "an individual who is employed by an employer." *See Lattanzio v. Security Nat'l Bank*, 825 F.Supp. 86, 89–90 (E.D.Pa.1993) (applying *Darden*'s common-law of agency analysis to Title VII's definition of employee); *Stouch v. Brothers of Order*, 836 F.Supp. 1134, 1139 (E.D.Pa.1993) (applying same analysis to ADEA's definition of employee).

The common-law test for distinguishing between an employee and an independent

---

**2.** The term "employer" is defined to mean:

[A] person engaged in an industry affecting commerce who has *fifteen or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year....

42 U.S.C. § 2000e(b) (1988) (emphasis added).

**3.** The term "employment agency" is defined to mean:

[A]ny person regularly undertaking with or without compensation to procure employees

for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

42 U.S.C. § 2000e(c) (1988). The defendants do not contest that they satisfy the definition for an employment agency.

**4.** The term is construed to incorporate the "general common law of agency, rather than ... the law of any particular State." *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 740, 109 S.Ct. 2166, 2173, 104 L.Ed.2d 811 (1989).

contractor was described in *Darden* as follows:

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden,* —— U.S. at —— – ——, 112 S.Ct. at 1348–49 (quoting *Reid,* 490 U.S. at 751–52, 109 S.Ct. at 2178–79 (footnotes omitted)).[5]

▬ Among the above factors the greatest emphasis is placed on the hiring party's right to control the manner and means by which the work is accomplished. *Lattanzio,* 825 F.Supp. at 89; *Stouch,* 836 F.Supp. at 1140 n. 5. Some of the above factors, when applied to the facts in this case, point toward a finding of an employer-employee relationship between the temporary workers and the defendants. For instance, the defendants are indeed in business, and it appears from the Stipulation of Facts that for tax purposes (i.e., the withholding of state, federal, social security and FICA taxes) the temporary workers were considered employees of the defendants. (D.I. 36 ¶ 16.) In addition, the duration of the relationship between the temporary workers and the defendants was capable of spanning many years. (*Id.* at ¶ 7.) However, a majority of the other factors

point toward a finding of an independent contractor relationship. First, there is no allegation that any instrumentalities or tools for work were provided by the defendants. Second, the temporary workers play no role in hiring or paying assistants. Third, the work done by the temporary workers is not part of the regular business of the defendants; the defendants' regular business is simply referring temporary workers to clients. Fourth, the location of the work was always on the defendants' clients' property. (*Id.* at ¶ 28.) Fifth, the defendants did not have the right to assign additional projects to the temporary workers because the temporary workers were not obligated to accept any work assignments that they were offered. (*Id.* at ¶ 25.) Sixth, the defendants' clients had complete discretion over when and how long the temporary workers worked. (*Id.* at ¶ 24.) Although the defendants retained the right to remove any temporary worker from the "availability list" if they failed to notify the defendants of their inability to report for work when on an assignment, (*id.* at ¶¶ 9, 21), this Court notes that even such a removal could not prevent the temporary worker from continuing to work for the client if the client so desired. Seventh, the temporary workers received no employee benefits from the defendants. (*Id.* at ¶ 13.) Finally, and most significantly, the defendants simply did not exercise any control over the manner or means of the temporary workers' job performance. The defendants did not train the temporary workers and more importantly, the defendants did not direct, supervise, or evaluate their activities. (*Id.* at ¶¶ 12, 15.) While the defendants did arrange for the billing of clients and the processing and delivery of checks to the temporary workers, (*id.* at ¶¶ 17, 18, and Ex. A pp. 22–32), the clients determined the temporary workers' hours and pay rate, (*id.* at ¶ 24, and Ex. A p. 22), and the work assign-

---

**5.** The plaintiffs urge upon this Court, in determining whether the temporary workers are employees of the defendants, the analysis employed in *Amarnare* concerning how to identify multiple employers. That case is distinguishable, however, in that it was assumed for the purposes of the motion before that court that the plaintiff was an employee of the temporary agency and the court was analyzing whether the plaintiff, under common-law agency principles could, as an employee of the temporary agency, also be considered an employee of the hiring company. *Amarnare,* 611 F.Supp. at 349. Here, on the other hand, the question of whether the temporary workers are employees of the defendants' employment agency in the first instance is in dispute. As such the multiple employer analysis utilized by *Amarnare* is inapposite.

ments that the temporary worker would be assigned while on the client's premises.[6]

It is clear that, in light of the emphasis on the "control of the manner and means" factor, as well as the additional weight of the other factors, this Court is compelled to find that the temporary workers are not "employees" of the defendants within the meaning of Title VII. As a result this Court does not find subject matter jurisdiction as to defendants as "employers" because the defendants do not have fifteen or more employees as required by Title VII.

### B. An Employment Agency With Less Than Fifteen Employees Is Not Subject To Title VII For Suits Against It As An Employer.

■ The plaintiffs also argue that they are entitled to sue the defendants as an "employment agency" under Title VII. The defendants do not contest their status as an "employment agency" within the meaning of Title VII but nevertheless argue that the employment practices prohibited to employers and those prohibited to employment agencies are different in significant respects and therefore they cannot be sued as an employment agency for practices which are only prohibited to an employer. If the defendants' arguments are correct, the status under which the defendants are sued, as an employer or as an employment agency, is critical because the acts prohibited of an employment agency have no numerical threshold before they take effect, in contrast to the acts prohibited of an employer which require a minimum of fifteen employees to take effect.[7]

A careful reading of the statute is necessary in order to properly evaluate the defendants' argument. In 42 U.S.C. § 2000e–2(b),

the heading "Employment agency practices" reads:

[i]t shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

This is in contrast to § 2000e–2(a) which under the heading "Employer practices" reads:

[i]t shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

■ This Court is presented with what appears to be a case of first impression in this Circuit in interpreting Title VII's scope. The issue succinctly stated concerns whether an "employment agency" with less than fifteen employees can be sued for acts "employers" are prohibited from engaging in. The plaintiffs argue that the language of the statute in stating that it is an unlawful employment practice for employment agencies to "fail or refuse to refer for employment, or

---

**6.** Plaintiffs argue that the Franchise Agreement entered into by the defendants, and the time sheets as well as a pamphlet provided to defendants by Snelling & Snelling which describe the temporary workers as employees are binding on the defendants. (D.I. 37 at 10–11). While courts have recognized that the parties' intention to form an employer-employee relationship can be a factor, *see, e.g., Stouch*, 836 F.Supp. at 1140 (considering intention of parties to form an independent contractor relationship), it is not dispos-

itive. Ultimately, the determination in this action, where subject matter jurisdiction is being questioned, of an individual's status as an "employee" for purposes of Title VII is a question of law for the Court to decide and not for the parties to designate by written documents or otherwise.

**7.** *See* definitions *supra* of "employer" and "employment agency."

otherwise discriminate" covers more than just referral activities, and extends the prohibitions to all those activities employers are prohibited from engaging in. This, they argue, is evidenced by the phrase "or otherwise to discriminate."[8] This Court is unconvinced. If Congress had intended the language "or otherwise to discriminate" to be all inclusive in its prohibitions then there would have been no need to include the supplemental phrase following this language, namely, "or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." This Court will not read the statute so as to make this additional language surplusage. Indeed, "in construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter,* 442 U.S. at 339, 99 S.Ct. at 2330. It is certainly possible to give effect to this language. This Court understands the language "or otherwise to discriminate" to modify the phrase "to fail or refuse to refer for employment" and thereby to encompass prohibited discrimination with respect to referrals that fall short of failure or refusal to refer. It is clear then that the practices prohibited to "employment agencies" do not encompass the practices prohibited to "employers." The Fifth Circuit came to the same conclusion in *Greenlees v. Eidenmuller Enterprises, Inc.,* 32 F.3d 197, 198–99 (5th Cir.1994), holding that "employment agencies" with less than fifteen employees may not be sued as "employers." Because the plaintiffs are alleging activities prohibited only to "employers," this Court does not find subject matter jurisdiction as to the defendants as an "employment agency."

## IV. Conclusion

In light of this Court's finding that the defendants' temporary workers are not "employees" for purposes of Title VII, and that an "employment agency" that is not an "employer" cannot be sued for practices prohibited only to an "employer," this Court will enter forthwith an order dismissing this action for lack of subject matter jurisdiction.

---

**8.** Plaintiff's Opening Brief On Jurisdictional Issue, (D.I. 37 at 12–13) (citing *Schattman v. Texas Employment Comm'n,* 330 F.Supp. 328 (W.D.Tex.1971), *rev'd,* 459 F.2d 32 (5th Cir. 1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973)).