**Lilia A. WILLIAMS, Plaintiff,**

**v.**

**Anthony CARUSO, Law Access Inc., a Delaware Corporation, and Western Staff Services, Inc., a Delaware Corporation, Defendants.**

**Civil Action No. 96–545 MMS.**

United States District Court, D. Delaware.

June 6, 1997.

Jeffrey K. Martin, of Jeffrey K. Martin, P.A., Vicki A. Hagel, of Vicki A. Hagel, P.A., Wilmington, DE, for Plaintiff.

Sheldon N. Sandler, of Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Anthony Caruso and Law Access, Inc.

Thomas P. Preston, Teri L. Thompson, of Duane, Morris & Heckscher, Wilmington, DE, for Western Staff Services, Inc.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

## INTRODUCTION

Lilia Williams ("Williams") filed a complaint against Anthony Caruso ("Caruso"), Law Access, Inc. ("Law Access") and Western Staff Services Inc. ("Western") asserting numerous counts arising from Caruso's alleged sexual harassment of her. Specifically, she has alleged claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as well as state law claims of battery, breach of the covenant of good faith and fair dealing, intentional interference with contract, intentional interference with prospective business relations, and emotional distress.

Defendants Caruso and Law Access responded with a motion to dismiss while defendant Western answered Williams' complaint and subsequently filed a motion for summary judgment. Williams' answer to the motion to dismiss was accompanied by a

supporting affidavit relating to her Title VII claims. Therefore, the portion of the motion to dismiss relating to Williams' Title VII claims, and only that portion, will be considered a motion for summary judgment.

Certain issues were conceded at oral argument. First, the Title VII claims against Caruso, an individual employee, were withdrawn. *See Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077–78 (3d Cir.1996) *(en banc),* petition for cert. filed, 65 U.S.L.W. 3571 (U.S. Feb. 3, 1997) (No. 96–1231). Second, in light of Williams' affidavit filed in response to its motion to dismiss, Law Access withdrew its motion to dismiss the Title VII claims. Third, Williams withdrew her claims for battery and emotional distress, as barred by the statute of limitations. As a result, Williams agreed, Caruso is no longer a defendant in this suit. Finally, Law Access conceded certain arguments made in its reply brief should not be considered by the Court because they were made in violation of the local rules of this district. *See* Del. L.R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

## FACTS

The facts, viewed in the light most favorable to the plaintiff, are as follows: Williams commenced employment as a temporary worker with Western, a temporary employment agency, on May 16, 1994, and was placed that same day to work at Law Access. Docket Item ("D.I.") 1 ¶ 9. Caruso, a Law Access employee, trained Williams in her duties. *Id.* ¶ 12. Within several weeks after Williams began working at Law Access, Caruso's actions and statements led Williams to believe he was romantically attracted to her. *Id.* ¶ 16. Williams informed Caruso she was not interested in a romantic relationship with him. *Id.* Around that time, Caruso presented Williams with a handwritten letter [1] stating:

Lilia,

I've been having trouble sleeping at night.

You have been in my thoughts.

I've been imagining you pressed up against me.

I long to caress your smooth, sexy naked body.

I want to touch you everywhere.

Not just with my hands.

I want to taste your lips.

I want to taste your body.

You are so sexy. So attractive.

I want to drive you wild.

Every time our hands touch, or you brush up tight against me—

I imagine kissing your gorgeous body all over.

I'm not sure if you are attracted to me,

I feel like you are.

Share your thoughts with me. I want you.

-Tony

*Id.* ¶ 17. Williams complained about the letter to two supervisors at Law Access, John Brooks and Maria Williams. *Id,* ¶ 18. Brooks promised to investigate and report back to the plaintiff, but he never did. *Id.*

Williams reported the sexual harassment to Western on June 3, 1994. Affidavit of Lilia A. Williams ("Williams Affidavit") ¶ 17. According to Western, it was informed by Law Access that same day Williams' job performance was inadequate, and as a result, Law Access did not wish to continue with her employment. Affidavit of Kathy Gibbs ("Gibbs Affidavit") ¶ 6. Williams was told by Western of Law Access' decision on June 5, 1997. *Id.* There is a dispute over the stated reason for the termination; according to Western, the reason given was poor job performance. D.I. 11, at 4. Williams maintains she was told Law Access had overhired. Williams Affidavit ¶ 15. Whatever the reason given, the termination contradicted a statement previously made to Williams that the position at Law Access would last approximately one year. D.I. 1 ¶ 19.

Western asserts it offered Williams another placement about one month later, which she declined. Gibbs Affidavit ¶ 12. This is not disputed by Williams, although, at oral argument Williams claimed she declined that

1. A copy of the letter is attached to the complaint.

placement because of the poor treatment she received at the hands of Western regarding her complaint of sexual harassment; in essence, she claims constructive discharge in retaliation for her complaint of sexual harassment. Western states it offered the plaintiff yet another position several months later, but she never responded. Gibbs Affidavit ¶ 12. Plaintiff's counsel could neither confirm nor deny she was presented with this second offer.

Williams filed charges of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor against Western and Law Access in June 1994. D.I. 1 ¶ 4. The EEOC issued to Williams a Notice of Right to Sue with respect to Law Access on August 13, 1996, and a Notice of Right to Sue with respect to Western on September 9, 1996. *Id.*, ¶¶ 5, 6. Williams asserts that she did not receive the Notice of Right to Sue regarding Law Access until August 17, 1996, because she had recently moved and the notice was erroneously sent to her old address and then forwarded. D.I. 7, Exh. A.

## DISCUSSION

Defendants' numerous remaining arguments that Williams' claims must be dismissed and/or that summary judgment is warranted will be considered individually below. In essence, Law Access contends Williams' remaining state law claims are either time-barred or preempted by the Delaware Workers' Compensation statute. Western moves for summary judgment on Williams' Title VII claims—it asserts it can be sued only in its capacity as Williams' employment agency, not as Williams' employer, and Williams has not claimed any "employment agency practices" made unlawful under Title VII. Further, Western contends Williams has not met her prima facie case of retaliation under Title VII. Finally, for the same reasons raised by Law Access, Western urges Williams' remaining state law claims are time-barred.

For the reasons that follow, the Court will grant Law Access' motion to dismiss Williams' state law claim for breach of the covenant of good faith and fair dealing, but it will deny Law Access' motion with respect to Williams' claims of tortious interference with contract and tortious interference with prospective business relations. The Court will grant summary judgment to Western on Williams' Title VII sex discrimination and retaliation claims. Finally, the Court will grant Western's motion for summary judgment on Williams' claim of breach of the covenant of good faith and fair dealing.

### I. Legal Standards

In deciding defendants' motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court's job is to "determine whether, under any reasonable reading of the pleadings, the plaintiff[ ] may be entitled to relief...." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). All of the allegations in the plaintiff's complaint must be accepted as true, as well as all reasonable inferences that may be drawn therefrom. *Id.* "Unless the plaintiff can prove no set of facts in support of the claim that would entitle [the plaintiff] to relief, the complaint should not be dismissed." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994).

Motions for summary judgment, on the other hand, are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir.1997). "The nonmoving party creates a genuine issue of material fact if he or she provides sufficient evidence to allow a reasonable jury to find for him or her at trial.... In reviewing the record, the court must give the nonmoving party the benefit of all reasonable inferences." *Id.*

## II. Law Access' Motion to Dismiss Williams' State Law Claims

As noted above, Williams concedes her claims for battery and emotional distress are barred by Delaware's two-year statute of limitations on personal injury actions. Law Access now asserts Williams' remaining state law claims—breach of the covenant of good faith and fair dealing, intentional interference with contractual relations, and intentional interference with prospective business relations—are subject to that same two-year statute of limitations on personal injury claims, and therefore, also are time-barred. Williams' position is these claims are governed by Delaware's three-year statute of limitations. Law Access alternatively argues the claims are barred by the Workers' Compensation statute; Williams urges they are not.

The Court does not reach these issues with respect to Williams' claim for breach of the covenant of good faith and fair dealing because it finds Williams has not stated a claim under Rule 12(b)(6). However, the Court will decide whether Williams' two remaining state claims—intentional interference with contract and intentional interference with prospective business relations—are governed by a two-year statute of limitations and/or barred by Delaware's Workers' Compensation statute.

### A. *Breach of the covenant of good faith and fair dealing*

In *Merrill v. Crothall-American, Inc.,* 606 A.2d 96 (Del.1992), the Delaware Supreme Court held there exists a limited implied covenant of good faith and fair dealing in connection with at-will employment contracts. The confines of the covenant were defined as follows: "[T]o constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute 'an aspect of fraud, deceit or misrepresentation.'" *Id.* at 101 (citations omitted).

While the court in *Merrill* specifically reserved the question of the applicability of the covenant to employment termination, it faced that issue in *E.I. DuPont de Nemours and Co. v. Pressman,* 679 A.2d 436 (Del.1996). In light of the fraud-related limitation set forth in *Merrill,* the court held a cause of action existed for breach of the covenant if an employee's supervisor falsely manufactured evidence leading to that employee's dismissal. *Id.* at 444.

The Delaware Chancery Court in *Shearin v. E.F. Hutton Group, Inc.,* 652 A.2d 578 (Del.Ch.1994), adopted another limitation on the at-will doctrine—one that has been recognized by a number of other state courts. In *Shearin,* the court found the plaintiff had stated a claim for breach of the implied covenant of good faith and fair dealing based on a violation of public policy. *Id.* at 588–89. In that case, the plaintiff was a lawyer who alleged she was fired for taking action she believed was required by the Rules of Professional Conduct for attorneys. The court reasoned:

> The maintenance of established codes of ethical behavior by licensed professionals is of immense social value.... The role of lawyers in the operation of the legal and regulatory system is too vital to the achievement of the public good for the law to countenance with equanimity the exertion of powerful economic pressure to violate the ethical duties of a lawyer; the ability of an employer to fire a regularly employed professional who refuses to violate those rules is, of course, just such a powerful pressure.

*Id.* at 588. *See also Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974).

Williams argues her claim survives under *Pressman* based on her allegation that Law Access and/or Western misrepresented to her the cause of her termination. According to Williams, the defendants falsely told her the reason for her termination was Law Access had overhired. This argument is not persuasive. Nothing in *Pressman* suggests an employer who gives an employee a false reason for termination is subject to liability under the implied covenant of good faith and fair dealing. *Pressman* only held culpable the *manufacture* of grounds for dismissal, not the *statement* of a false reason for dismissal.

While the Delaware Supreme Court has not addressed the issue directly, this

Court predicts the Delaware Supreme Court would not extend the covenant of good faith and fair dealing to an employer's alleged misstatement of the reason for termination.[2] By definition, the harm to the employee is the termination, not the reason assigned for that termination. Further, there is no requirement under Delaware law for an employer to give an at will employee any reason for termination.

■ Williams also asserts a claim under *Shearin* that she was fired in retaliation for her sexual harassment complaint—a public policy violation. That argument, too, is unavailing in light of existing case law. *See Finch v. Hercules, Inc.,* 809 F.Supp. 309 (D.Del.1992). In *Finch,* the plaintiff sued claiming age discrimination under the Age Discrimination in Employment Act and under state law for wrongful termination in violation of public policy. This Court granted a motion to dismiss the state law claim, opining the Supreme Court of Delaware would not create a public policy exception to the at-will doctrine for a claim for which a statutory remedy already existed under state law. Delaware's statute prohibiting employment discrimination, Del.Code Ann. tit. 19 §§ 710 *et seq.,* provides such a statutory remedy.

As Delaware's employment discrimination statute also covers retaliatory discharge, *id.* § 726, the reasoning of *Finch* is equally persuasive that the Delaware Supreme Court would not approve a public policy exception to the at-will doctrine based on retaliatory discharge. As Williams has not stated a claim for breach of the implied covenant of good faith and fair dealing under existing legal authority, the claim will be dismissed.

B. *Statute of Limitations on state law claims for tortious interference with contract and tortious interference with prospective business relations*

■ As the Delaware Supreme Court has not addressed the statute of limitations applicable to these claims, the Court once again must predict its path. *Scotts African Union Methodist Protestant Church,* 98 F.3d at 92. Delaware's three-year statute of limitations, Del.Code Ann. tit. 10 § 8106, states:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of action; subject, however, to the provisions of §§ 8108–8110, 8119 ... of this title.

Delaware's two year statute of limitations for personal injuries, Del.Code Ann. tit. 10 § 8119, states:

> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such injuries were sustained....

It is clear the two-year period of section 8119 is an exception to the three-year period of section 8106. *Read v. Local Lodge 1284,* 528 F.2d 823, 825 (3d Cir.1975) (citing *Patterson v. Vincent,* 61 A.2d 416 (Del.Super.1948)). However, characterizing which limitations period to apply by labeling a cause of action as sounding in "tort" or "contract" does not end the inquiry as to whether plaintiff is claiming a personal injury. The focus is on the particular injury suffered and not the nature of the cause of action asserted. *Id.,* Stated differently, the two-year limitations period will apply if the claim is for personal injuries regardless of the cause of action asserted.

2. Where state law is unsettled, this Court must predict how the Delaware Supreme Court would resolve a particular dispute. *Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church,* 98 F.3d 78, 92 (3d Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 688, 136 L.Ed.2d 612 (1997).

The Delaware courts have defined personal injuries as involving "injuries to a person's security, which consists 'in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation.'" *Read,* 528 F.2d at 828 (citations omitted) (dissenting opinion); *Smith v. Goldstein,* 447 F.Supp. 1244, 1247 (D.Del.1978). Under that definition, the plaintiff's claims for intentional interference with contract and intentional interference with prospective business relations, while considered to be "torts," will redress not personal injuries but injuries to plaintiff's business and economic interests in the form of lost wages and benefits. *Cf. Smith,* 447 F.Supp. at 1247; *Lankford v. Scala,* No. 94C-04-023, 1995 WL 156220, at *2 (Del.Super.1995). Therefore, the two-year statute of limitations stated in Section 8119 does not bar these two causes of action.

The Court reaches this conclusion after considering, but rejecting, Law Access' argument that *Romeo v. Young,* No. 87-113, 1987 WL 28147 (D.Del. Dec.11, 1987), *aff'd,* 853 F.2d 920 (3d Cir.1988), mandates the opposite result. In *Romeo,* the plaintiff's complaint—while vague—was construed to assert claims under 42 U.S.C. §§ 1981 and 1983, based on the plaintiff's allegations he was terminated from his employment based on his race. The court dismissed the complaint as time-barred based on Delaware's two-year statute of limitations for personal injury. The present case is distinguishable.

In *Romeo,* the plaintiff asserted *federal civil rights claims* for which the United States Supreme Court has specifically held the most analogous state claims are for personal injuries. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (section 1981); *Wilson v. Garcia* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (section 1983). The Supreme Court based these holdings on its belief in the desirability of fashioning one broad statute of limitations to cover all claims brought under section 1981 and section 1983, respectively. The Court therefore held that, despite the fact that some actions under these statutes could resemble claims for economic injury, the thrust of both statutes was the protection of rights personal to individuals. As the Supreme Court stated in *Wilson:*

> Among the potential analogies [to state law claims], Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injuries than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *"person"* subject to the jurisdiction of any of the several States. The Constitution's command is that all *"persons"* shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

471 U.S. at 277, 105 S.Ct. at 1947-48.

One passage from *Goodman* is particularly relevant to the present issue:

> [Petitioners'] submission is that § 1981 deals primarily with economic rights, more specifically the execution and enforcement of contracts, and that the appropriate limitations period to borrow is the one applicable to suits for interference with contractual rights.... The Court of Appeals properly rejected this submission. Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but personal rights to sue, to testify, and to equal rights under all laws.... Insofar as it deals with contracts, it declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds.... That § 1981 has far-reaching economic consequences does not change this conclusion, since such impact flows from guaranteeing the personal right to engage in economically significant activity free from racially discriminatory interference.

482 U.S. at 661-62, 107 S.Ct. at 2621.

Because similar claims brought under state law lack these "unique federal policy con-

cerns," the Third Circuit Court of Appeals has held a different analysis is to be used in determining the applicable statute of limitations. *Mazzanti v. Merck and Co.*, 770 F.2d 34, 36 (3d Cir.1985); *see also Gavalik v. Continental Can Co.*, 812 F.2d 834, 843 (3d Cir.1987).[3] In *Mazzanti* it was held a claim of tortious interference with an employment contract fell within Pennsylvania's two-year statute of limitations for "taking, detaining or injuring personal property." 770 F.2d at 35–36. That holding is not applicable here because Delaware does not have a similar statute of limitations.

Focusing on the nature of the injury claimed, as Delaware law requires, it is clear Williams has claimed economic injuries, as opposed to physical injuries, and therefore her claims are not subject to Delaware's two-year statute of limitations. Therefore, Law Access' motion to dismiss Williams' claims for tortious interference with contract and tortious interference with prospective business relations on statute of limitations grounds will be denied.

C. *Delaware's Workers' Compensation Statute*

Under Delaware's Workers' Compensation Statute, "[e]very employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment...." Del.Code Ann. tit. 19 § 2304. As an alternative to its argument plaintiff's state law claims are barred by the statute of limitations, Law Access argues the claims are preempted by the Workers' Compensation Act. The Court disagrees.

Personal injury is defined in the Act as "violence to the physical structure of the body, such disease or infection as naturally results directly therefrom ... and compensable ionizing radiation injuries arising out of and in the course of employment." *Id.* § 2301(12). The Delaware Supreme Court has held the phrase "physical structure of the body" is to be construed broadly; thus, mental injuries are compensable under the Act. *State v. Cephas*, 637 A.2d 20, 24–25 (Del.1994). However, even an extremely broad construction will not bring Williams' claims for tortious interference with contract and tortious interference with prospective business relations within that definition. They are simply claims for injuries to Williams' economic interests. Therefore, Law Access' motion to dismiss based on Workers' Compensation preemption also will be denied.

## III. Western's Arguments for Summary Judgment

A. *Williams' Title VII Sex Discrimination Claims*

Western asserts claims under Title VII for sex discrimination and retaliatory discharge. Her sex discrimination claims will be considered first. Western argues these claims must be dismissed because it was not Williams' employer for purposes of Title VII, and therefore, it is not liable for unlawful "employer practices." Further, Western urges, Williams has not alleged any unlawful "employment agency practices." As Williams has not stated any sex discrimination claims against it that are cognizable under Title VII, Western asserts the claims must be dismissed.

Title VII distinguishes between unlawful "[e]mployer practices," and unlawful "[e]mployment agency practices." 42 U.S.C. § 2000e–2. The statute states, in pertinent part:

> § 2000e–2. Unlawful employment practices
>
> (a) Employer practices
>
> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

3. These opinions were decided before the Supreme Court's opinion in *Goodman*, and therefore do not reference it. Nevertheless, the same principle applies.

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b) Employment agency practices

It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

The statute also defines both the term "employer" and the term "employment agency." 42 U.S.C. § 2000e. The term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees...." *Id.* § 2000e(b).

The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

*Id.* § 2000e(c).[4]

1. *Unlawful Employer Practices*

Whether Williams can sue Western as her employer turns on an evaluation of common law agency principles. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (defining covered employee under ERISA); *Walker v. Correctional Med. Sys.,* 886 F.Supp. 515, 519–20 (W.D.Pa.1995) (Title VII).[5] The Supreme Court set forth the following considerations for determining whether an employer/employee relationship exists:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323–24, 112 S.Ct. at 1348 (citing Restatement (Second) of Agency § 220(2)).

In a slightly different context, the issue of whether, under the *Darden* agency principles test, temporary workers are employees of employment agencies was discussed in *Kellam v. Snelling Personnel Servs.,* 866 F.Supp. 812 (D.Del.1994), aff'd, 65 F.3d 162 (3d Cir.1995).[6] In *Kellam,* the plaintiff, a permanent employee of an employment agency, sued the agency under Title VII. One issue before the court was whether the defendant had 15 or more employees—a jurisdictional requirement for a Title VII suit.[7]

4. "Person" is defined as "one or more individuals ... partnerships, associations, corporations...." *Id.* § 2000e(a).

5. Prior to the Supreme Court's decision in *Darden,* the Third Circuit Court of Appeals had adopted a slightly different test for determining whether an individual was an employee for purposes of suing under Title VII and the ADEA. *See EEOC v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir. 1983). That test, referred to as a "hybrid test," focused on agency principles as well as the economic realities of the situation, in other words, "the degree of [economic] dependence of alleged employees on the business with which they are connected...." *Id.* at 37. Although the Third Circuit Court of Appeals has not revisited the issue since *Darden,* many courts have held *Darden's* agency principles test controls who may sue in Title VII cases. *See Walker,* 886 F.Supp. at 519–20 (citing cases). Accordingly, the Court will apply the *Darden* test in this case.

6. *Kellam* was decided before the Supreme Court's opinion in *Darden*; its analysis is the same as that used in *Darden,* however.

7. The precise requirement is that an employer have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar

The court found the temporary workers were independent contractors rather than employees for purposes of determining the jurisdictional requirement.

The court's conclusion was informed largely by its determination that one of the foremost factors to consider in evaluating the existence of an employee-employer relationship is the "hiring party's right to control the manner and means by which the work is accomplished." 866 F.Supp. at 815. *See also Darden,* 503 U.S. at 323, 112 S.Ct. at 1348 ("In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished."). An employment agency, the *Kellam* court found, plays no role in the temporary worker's job training, direction, supervision, or evaluation. *Id.* Therefore, despite the fact that for tax purposes, the temporary workers were considered employees of the employment agency, the court found "a majority of the other factors point toward a finding of an independent contractor relationship." *Id.*

The holding of *Kellam* is persuasive here. Williams was a temporary worker assigned to work for Law Access; Western did not play a role in "the manner and means" by which Williams' work was accomplished. *Kellam,* 866 F.Supp. at 815. The record in this case demonstrates Williams was trained and supervised by Caruso, an employee of Law Access; furthermore, Williams was not accountable on a day-to-day basis to any employee of Western. Compliance with other *Darden* factors are set forth in the Gibbs Affidavit ¶ 5.[8]

Williams does not dispute these assertions, but maintains she received her paycheck from Western, thus it was her employer. Williams Affidavit ¶ 5. This fact, alone, is not sufficient to support a finding Williams was the employee of Western under agency principles. Therefore Williams may not sue Western for alleged "unlawful employer practices."

This conclusion is bolstered by the framework of Title VII, which distinguishes between unlawful employer practices and unlawful employment agency practices, as set forth above. Thus, assuming statutory criteria are met, Western is subject to suit as an "employer" only by its permanent employees, not the temporary workers it places in other employment. If the Court were to permit Williams to sue Western as her "employer," the prohibitions relating to employment agencies would be rendered superfluous. *See also Greenlees v. Eidenmuller Enters., Inc.,* 32 F.3d 197, 198–99 (5th Cir.1994) (noting distinction between suing employment agency in its capacity as employment agency versus its capacity as permanent employer).

### 2. *Unlawful Employment Agency Practices*

██ Western next contends Williams has not stated any unlawful employment agency practices cognizable under Title VII, and therefore, her sex discrimination claims must be dismissed. Williams in response asserts her claims of sex discrimination are covered by the language of the statute regarding employment agency practices.

To reiterate, Title VII states:

> It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, **or otherwise to discriminate against,** any individual because of his race, color, religion, sex,

year." 42 U.S.C. § 2000e(b). The Supreme Court recently discussed this requirement in *Walters v. Metropolitan Educational Enterprises, Inc.,* — U.S. —, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997).

8. Paragraph 5 of the Gibbs Affidavit states in full: Plaintiff never performed any work for Western. During her temporary assignment at Law Access, Law Access was solely responsible for the day to day supervision of Plaintiff's work activities. In that position, Plaintiff worked only with Law Access employees, including codefendant Anthony Caruso. She reported to Law Access each day and was supervised by Law Access employees. Law Access provided Plaintiff with all of the training and materials necessary to perform her assignment, and Law Access could discharge Plaintiff at its discretion. Western issued Plaintiff's paychecks, but Law Access determined Plaintiff's rate of pay and hours worked. Plaintiff accrued no annual leave by virtue of her assignment at Law Access. Likewise she did not accumulate any retirement benefits.

or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(b)(emphasis added).

The *Kellam* case is relevant once again; it considered the scope of the unlawful employment agency practices made actionable under Title VII. The court rejected an argument similar to Williams', that the language of Title VII making it unlawful for employment agencies "otherwise to discriminate" meant to subject employment agencies to the wide range of prohibitions that Title VII places on employers. The court explained:

> This Court understands the language "or otherwise to discriminate" to modify the phrase "to fail or refuse to refer for employment" and thereby to encompass prohibited discrimination with respect to referrals that fall short of failure or refusal to refer. It is clear then that the practices prohibited to "employment agencies" do not encompass the practices prohibited to "employers."

866 F.Supp. at 817.

Western does not dispute it is an employment agency as defined by Title VII. Giving Williams the benefit of all reasonable inferences, there are no allegations that Western discriminated against Williams based on her sex in relation to referrals. In fact, Williams conceded she was offered at least one other placement after her release from Law Access. Therefore, Western's motion for summary judgment on Williams' Title VII claims of sex discrimination will be granted.

B. *Williams' Title VII Retaliation Claims*

With respect to Williams' claim of retaliation in violation of Title VII, Western urges Williams has not met her prima facie case. Her prima facie case is: 1) she engaged in an activity protected by Title VII; 2) she was discharged subsequent to or contemporaneously with such activity; and 3) a causal link existed between the protected activity and the discharge. *Azzaro v. County of Allegheny,* 110 F.3d 968, 973 (3d Cir.1997) (en banc).

Western contends Williams has not met prongs (2) or (3) of her prima facie case. First, it urges, it did not discharge nor did it take any adverse employment action with respect to Williams after learning of Williams' sexual harassment claims; second, there is no causal link between the protected activity and the alleged discharge.

Williams' attempt to meet prong (2) of her prima facie case is the assertion she was constructively discharged by Western following her complaint of sexual harassment.[9] A constructive discharge occurs "when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge." *Sheridan,* 100 F.3d at 1075. Thus, because a constructive discharge can be equated with a termination, a viable constructive discharge claim could satisfy prong (2) of her prima facie case.

The test for constructive discharge is an *objective* one that asks whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Id.* Consequently, the employee's subjective perspective on the situation does not control. *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1162 (3d Cir. 1993).

Williams' claim of constructive discharge centers on Western's treatment of her following her complaint about the sexual harassment at Law Access. She asserts Western failed to fully investigate her complaint, failed to push for her reinstatement at Law Access, and was not emotionally supportive of her.

Western submitted an affidavit by Kathy Gibbs, who is branch manager for Western's New Castle County office. Gibbs Affidavit ¶ 1. Gibbs states she met with Williams to discuss Williams' complaint. *Id.* ¶ 8. Gibbs then proceeded to contact Law Access to investigate the complaint. *Id.* ¶ 9. Gibbs learned a meeting had taken place involving

9. This appears nowhere in the motion papers; however, it was raised at oral argument.

Law Access management, Caruso and Williams and that subsequently Caruso had received a formal reprimand and had apologized to Williams. *Id.* Law Access assured her Williams' termination was not connected with the complaint. *Id.* From her investigation, Gibbs determined Law Access had not terminated Williams because of her complaint. *Id.* ¶ 10. Gibbs reported the results of her investigation to Williams. *Id.*

Western also submitted a copy of its policy on sexual harassment, which includes the statement:

> If a Western temporary employee is sexually harassed on assignment, the temporary employee should notify his/her local Western supervisor immediately. The supervisor should respond responsibly and appropriately by working with the customer to investigate the incident and safeguard the well-being of the employee. If warranted, the employee should be instructed to leave the work site.

D.I. 11, Exh. C.

Williams responded with an affidavit specifically denying the facts quoted above from the Gibbs Affidavit. Williams Affidavit §§ 17–20. She stated she never attended a meeting with Gibbs and that she never received a response from Western about her complaint of sexual harassment. *Id.* ¶ 17.

Mindful that, at this procedural posture, it must accept Williams' version of the facts as true, the Court nevertheless finds Williams has not stated a viable claim of constructive discharge. It is true Western, under its sexual harassment policy, undertook to investigate complaints of sexual harassment. However, the record is uncontroverted that an investigation did take place. More importantly, although Western's policy promised an investigation, it did not guarantee reinstatement of the employee upon completion of the investigation. To the contrary, the employee's ultimate remedy under the policy was to be removed from the offending work site if necessary.[10] This is not surprising since the basic business reality is an employment agency servicing a client-employer has no leverage to compel an employer to take affirmative measures to remedy discrimination. All the employment agency can do is remove the employee from the work site.

The Third Circuit recently explored the adequacy of an investigation by an employer in response to a claim of sexual harassment. *Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir.1997). The defendant employer claimed it was not liable because it took prompt and adequate remedial measures after learning of the complaint; the plaintiff claimed those measures were inadequate. The court opined the focus was not on the adequacy of the investigation of a complaint, rather, what was important was whether the subsequent remedial action was "reasonably calculated to prevent further harassment." 114 F.3d at 412 (citation omitted). Although factually distinguishable, *Knabe* is added support for the conclusion Western's allegedly inadequate investigation did not amount to constructive discharge.

Williams' final complaint is she was not apprised of the results of the investigation and was left with hurt feelings about the situation. While this may reflect poorly on Western, in essence it is a subjective complaint which is not probative of Western's motives. Furthermore, there is no evidence Western's alleged failure to report back to Williams was due to *sex discrimination* as opposed to mere thoughtlessness or indifference. There is simply insufficient support in the record for the proposition that Western "knowingly permitted conditions of discrimination in employment so intolerable" that Williams reasonably refused further placements. *See Sheridan*, 100 F.3d at 1075.

Because Williams has not stated a viable claim for constructive discharge, she cannot maintain her claim for retaliation under Title VII. Western's motion for summary judgment will be granted.

C. *Williams' state law claims*

Williams has asserted state law claims against Western for emotional distress and breach of the covenant of good faith and fair dealing. As discussed above, Williams has conceded her claim for emotional distress is

**10.** Of course, because of Williams' discharge, such measures were not considered in her case.

time-barred. Western's motion for summary judgment on Williams' claim for the breach of the covenant of good faith and fair dealing will be granted, as Williams' claim is based on the same facts set forth in connection with her claim against Law Access. She essentially alleges Western gave her a false reason for her termination from Law Access and/or terminated her in retaliation for her complaint of sexual harassment. As explained above, these allegations do not state a claim upon which relief can be granted.