March v. Technical Employment, et al. CV-98-636-M    03/03/00
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Christine March,
     Plaintiff

     v.                                   Civil No. 98-636-M
                                          Opinion No. 2000 DNH 055
Technical Employment Services, Inc.
and Daniel Duncanson,
     Defendants


**O R D E R**


     Christine March brings this Title VII action against her

former employer, Technical Employment Services, Inc. ("TESI"),

and her former supervisor, Daniel Duncanson.  See 42 U.S.C.

§ 2000e et seq.  She also brings a state common law claim for

assault and battery, over which she asks the court to exercise

supplemental jurisdiction.  See 28 U.S.C. § 1376.  Defendants

move to dismiss the complaint for lack of subject matter

jurisdiction over the claims against TESI and failure to state a

cognizable claim against Duncanson.  See Fed. R. Civ. P. 12(b)(1)

and (6).

## Standard of Review

A.    Rule 12(b)(6) - Defendant Duncanson's Motion to Dismiss.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983), aff'd without opinion, 745 F.2d 43 (1st Cir. 1984) (citations omitted).

B.    Rule 12(b)(1) - Defendant TESI's Motion to Dismiss.

There is some disagreement as to whether Title VII's "15 employee" requirement is jurisdictional or simply an element of the cause of action.  See generally E.E.O.C. v. St. Francis

2

Xavier Parochial School, 117 F.3d 621, 623-24 (D.C. Cir. 1997) (discussing the split in the circuits). The majority declares the requirement to be jurisdictional. See, e.g., Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332, 1340 (11th Cir. 1999) ("Because we have treated the question of whether a defendant meets the statutory definition of 'employer' as a threshold jurisdictional matter under Title VII, a plaintiff must show that her 'employer' had fifteen or more employees for the requisite period under the statute before her claims can be reached.") (citations omitted). This court has joined that majority. See Hoar v. Prescott Park Arts Festival, Inc., 39 F.Supp.2d 109, 110 (D.N.H. 1997).

When subject matter jurisdiction is challenged, the party invoking federal jurisdiction must establish that it exists. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). Here, plaintiff bears that burden of proof. So, before the court may exercise jurisdiction over her Title VII claims, she must establish that TESI employed the statutorily prescribed minimum

3

number of employees for the requisite period of time. See Prescott Park Arts Festival, Inc., 39 F.Supp.2d at 110 (D.N.H. 1997) ("Thus, the jurisdictional question presented by defendant's motion to dismiss is whether plaintiff can show that defendant had the statutorily required number of employees in the pertinent years."). To establish subject matter jurisdiction in this case, plaintiff must show that TESI employed at least fifteen employees for a minimum of twenty weeks in either 1995 or 1996. See 42 U.S.C.A. § 2000e(b); see also Walters v. Metropolitan Educ. Enterprises, 519 U.S. 202, 205 (1997).

When determining subject matter jurisdiction, the well-pleaded facts in the complaint are taken as true and inferences are resolved in favor of the nonmoving party. The court may, however, also consider evidence outside of the pleadings submitted to support or challenge jurisdictional allegations. See Fed. R. Civ. P. 12(b)(1); Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). Consequently, although plaintiff argues that TESI's motion should be construed as one for summary

4

judgment (because it is supported by an affidavit), TESI has properly presented it as a motion to dismiss under Rule 12(b)(1).

**Background**

Technical Employment Services employs and places temporary workers with various corporate clients. During the period relevant to this case, TESI concedes that it employed four permanent workers, including both plaintiff, who was employed from approximately October of 1992 through January of 1996, and Duncanson, who was TESI's president and chief executive officer. Duncanson was also a stockholder of TESI and acted as its corporate treasurer.

During both 1995 and 1996, TESI submitted documentation to the New Hampshire Department of Employment Security showing that it employed more than fifteen individuals (i.e., the four permanent employees, as well as temporary workers it placed with its clients) for more than the 20 week minimum prescribed by Title VII. See Exhibit B to plaintiff's objection (document no.

5

13).  With regard to those temporary employees, TESI admits that: "(1) the relationship between TESI and its temporary workers is capable of spanning months or possibly years; (2) TESI pays the temporary workers directly; and (3) TESI withholds federal, social security, and FICA taxes from the temporary workers." Defendants' memorandum (document no. 9) at 5.  The record also reveals that TESI paid workers' compensation premiums for those workers, paid them for holidays during their assignments with TESI's clients, and maintained the right to terminate their employment should they violate certain conditions of that employment.  Finally, TESI distributed a publication to all its temporary workers that provided, among other things:

> **We Are Your Employer.**  Always remember that regardless of where you are assigned, Technical Employment Services is your employer.  We pay you and are responsible for your payroll and withholding taxes, worker's compensation, etc.  Therefore, if there are any problems reporting to work, missing scheduled work time, or any job related problems, do not talk to the client company before reporting the problem to us. Remember, we are your employer and responsible for your work at the assigned job.

Employee pamphlet entitled, "Welcome to Technical Employment Services, Inc.," Exhibit A to plaintiff's memorandum.

Notwithstanding the foregoing, TESI denies that it employed (at least for Title VII purposes) the temporary workers whom it placed with various client organizations, and thus claims that it does not employ the statutory minimum number of workers (i.e., 15 for at least 20 weeks) and is not an "employer" under Title VII. In support of that position, TESI says that: (1) it did not provide the tools or instrumentalities for the jobs performed by the temporary workers; (2) although it paid the temporary workers, it did not determine the rate at which they were compensated; (3) the temporary workers performed their jobs on the clients' premises; (4) the clients had control over when and how long the temporary employees worked; and (5) the jobs performed by the temporary workers were "not a part of the regular business of TESI." Defendants' memorandum at 6.

**Discussion**

7

I.   Title VII Claims Against Duncanson.

Duncanson asserts that he cannot be held personally liable under Title VII for any alleged acts of discrimination.  Although the Court of Appeals for the First Circuit has declined to address the issue, see, e.g., Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 444 (1st Cir. 1997), this court previously aligned itself with the majority of courts that have considered the question, concluding that there is no individual liability under Title VII.  See Preyer v. Dartmouth College, 968 F.Supp. 20, 25 (D.N.H. 1997) ("[I]t is well-settled law in this district that there is no individual liability under Title VII.").  See also Douglas v. Coca-Cola, No. 94-97-M, slip op. at 18-19 (D.N.H. Nov. 6, 1995) (collecting cases).  Accordingly, as to defendant Duncanson, counts one and two of plaintiff's complaint are dismissed.[1]

---

[1]     Parenthetically, the court notes that even if it were possible, under certain circumstances, to pierce the corporate veil and impose "alter-ego" liability on a principal of a corporation for alleged violations of Title VII, plaintiff has failed to demonstrate that this case warrants such action.  She has failed to identify any of the factors traditionally present when the corporate form is disregarded and alter-ego liability is

II.  Subject Matter Jurisdiction Over Plaintiff's Title VII
     Claims Against TESI.

There is no doubt that TESI employed plaintiff.  The issue presented by TESI's motion to dismiss is whether it also employed the temporary workers it placed with its various corporate clients.  The answer to that question is potentially dispositive of plaintiff's Title VII claims against TESI because, if those workers are not deemed employees of TESI, it did not employ the statutory minimum number of employees and this court would lack subject matter jurisdiction over plaintiff's claims.

As noted above, TESI argues that, for Title VII purposes, it employs only the four permanent workers, and not the temporary workers.  Consequently, it says it does not meet Title VII's definition of "employer."  The court disagrees.

---

imposed on a principal (e.g., disregarding of corporate formalities, under-capitalization, use of the corporation for personal purposes, etc.).  And, she has failed to provide any legal support for her assertion that Duncanson can be held personally liable under Title VII as the "agent" of an "employment agency."  See 42 U.S.C. § 2000e(c).  See generally Greenlees v. Eidenmuller Enterprises, Inc., 32 F.3d 197, 198-99 (5th Cir. 1994).

9

A.   TESI Employs the Temporary Workers.

Relying largely upon an opinion of the United States District Court for the District of Delaware, TESI suggests that common law agency principles should determine whether TESI had an employer-employee relationship with those workers.  See Kellam v. Snelling Personnel Services, 866 F.Supp. 812 (D. Del. 1994).  If common law agency principles are applied to the facts of this case, says TESI, the court will necessarily conclude that TESI does not "employ" the temporary workers.

The relevant factors identified by the Kellam court include: (1) who pays the employees and withholds state and federal taxes from their salary; (2) who, from a tax standpoint, is treated as the employees' employer; (3) who retains the right to fire the employees; (4) who provides the tools or instrumentalities with which the employees perform their assigned tasks; (5) where the employees actually perform those tasks; (6) the duration of the relationship between the employees and the employment agency and the agency's client; (7) who controls the manner or means of the

10

employees' job performance.  See id., at 815 (citing Nationwide Mut. Ins. Co. v. Darden, 112 S.Ct. 1344, 1348-49 (1992)).

Of the factors identified above, the first, second, third, and sixth weigh in favor of the conclusion that TESI employs the temporary workers.  The court is persuaded that TESI in fact exercises sufficient control over substantial aspects of the temporary workers' terms and conditions of employment to warrant the conclusion that it "employs" those workers for purposes of Title VII.  Among other things, TESI collects those workers' time slips and pays their wages, withholds federal taxes on their behalf, pays workers' compensation premiums on their behalf, establishes certain conditions of their employment, and retains the right to discharge them.  It also appears that those workers are, for tax purposes, treated as employees of TESI.  TESI also retains the authority to determine which temporary employees are assigned to specific clients.  Finally, while not dispositive, it is certainly relevant that TESI itself advises each temporary worker, in writing, that "regardless of where you are assigned,

11

Technical Employment Services is your employer." Exhibit A to plaintiff's memorandum.

On balance, the foregoing factors decidedly support the conclusion that TESI (rather than the clients with whom the temporary workers are placed) actually employs those workers. Therefore, plaintiff has carried her burden and demonstrated that TESI employed "fifteen or more employees for each working day in each of twenty or more calendar weeks" in 1995 or 1996. Accordingly, the court has subject matter jurisdiction over her Title VII claims against TESI.  See 42 U.S.C. § 2000e(b).

B.    The "Joint Employer" Doctrine.

Even if TESI is not the sole employer of the temporary workers, it is, at a minimum, a "joint employer."  That is to say, at least for Title VII purposes, TESI and the clients with whom it places the temporary workers share the legal status of "employer."

12

1.    Legal Standard - The "Joint Employer" Doctrine.

In certain cases (like this one) in which the employer-employee relationship between parties is less than clear, "courts have suggested that the term 'employer' under Title VII should be construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or privileges of employment."  Astrowsky v. First Portland Mortgage Corp., Inc., 887 F.Supp. 332, 336 (D. Me. 1995) (citation and internal quotation marks omitted).  In this area of labor relations, there are two related but distinct concepts that may apply when a court is presented with the task of determining whether a defendant employs the jurisdictionally mandated minimum number of employees: the "single employer" doctrine and the "joint employer" doctrine.

As the Court of Appeals for the First Circuit has observed, "[t]he courts, in the Title VII context, have inappropriately used the terms 'single employer' and 'joint employer'

13

interchangeably, which in fact refer to two distinct concepts."

Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico, 929 F.2d 814, 820 n. 16 (1st Cir. 1991).  The Court of Appeals for the Second Circuit explained the distinction as follows:

> A "single employer" situation exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer."  The single employer standard is relevant when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a "single enterprise."  In contrast, in a "joint employer" relationship, there is no single integrated enterprise.  A conclusion that employers are "joint" assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationships jointly.

Clinton's Ditch Co-op. Co., Inc. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985) (citations and internal quotation marks omitted).  See also NLRB v. Western Temporary Services, Inc., 821 F.2d 1256, 1266 (7th Cir. 1986) ("The joint employer concept [as distinguished from the "single employer" doctrine], is not based on the integration of two companies but instead looks to the control two separate companies exert over the same employees.");

14

NLRB v. Browning-Ferris Indus. of Pennsylvania, Inc., 691 F.2d 1117, 1122-23 (3rd Cir. 1982) ("The basis of the finding [of joint employer status] is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.  Thus, the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those conditions of employment.").

The court of appeals for this circuit has echoed the holdings of other federal courts, observing that, "A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment."  Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir. 1993).  See also Rivas, 929 F.2d at 820 ("The joint employer inquiry is a matter of determining which of two, or whether both, respondents control, in the capacity of employer

15

the labor relations of a given group of workers.") (citation and internal quotation marks omitted). See generally Boire v. Greyhound Corp., 376 U.S. 473, 480-81 (1964). Relevant factors in this inquiry include:

> supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules; conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits, and overtime; and authority over the number of employees.

Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995). See also Clinton's Ditch Co-op Co., Inc., 778 F.2d at 138-39 (focusing on: authority to hire and fire; discipline; pay, insurance, and maintenance of employee records; supervision of employees; and participation in collective bargaining).

2. TESI is a Joint Employer of the Temporary Workers.

Here, TESI has at least shared authority to act in nearly all of the areas identified above. As noted previously, TESI collects the temporary workers' weekly time slips and issues

16

their paychecks; withholds federal taxes from their paychecks; pays their workers' compensation premiums; retains the right to hire, fire, and discipline them for various rules infractions; treats those individuals, at least for tax purposes, as its employees; and specifically declares to those workers that TESI, and not the client with whom they are placed, is their employer. See, e.g., Exhibit A to plaintiff's memorandum (demonstrating that TESI expressly retains control over several essential terms and conditions of the temporary workers' employment, including (in addition to those factors listed above): imposing limitations on their personal use of temporary employer's phones; requiring temporary employees to notify TESI if they are unable to attend work on a given day; requiring employees to report any job-related problems to TESI before disclosing them to the temporary employer; imposing certain dress standards; etc.).

In light of those facts, even if TESI is not the "sole" employer of the temporary workers, it has retained authority to exercise "significant control over [those] employees and [to]

17

share or co-determine those matters governing essential terms and conditions of employment." Rivera-Vega, 70 F.3d at 163 (quoting Holyoke Visiting Nurses, 11 F.3d at 306). As a result, TESI is, along with the clients with whom the temporary workers are placed, their "joint" employer. So, for Title VII purpose, TESI must be viewed as having employed the jurisdictionally minimum number of workers during the period of time relevant to this case. See Exhibit B to plaintiff's memorandum.

## Conclusion

Defendants' motion to dismiss (document no. 9) is granted in part and denied in part. There being no individual liability under Title VII, plaintiff has failed to state a viable federal claim against defendant Duncanson. Accordingly, counts one and two of plaintiff's complaint are, with regard to Duncanson, dismissed.

As to defendant TESI, however, plaintiff has satisfied her burden of demonstrating that TESI, whether individually, or

18

jointly with the client corporations it serves, employed at least 15 employees for a minimum of 20 weeks during 1995 or 1996. Defendants' motion to dismiss counts one and two against TESI is, therefore, denied.

Finally, to the extent that defendants move the court to decline to exercise supplemental jurisdiction over plaintiff's state law claim, that motion is denied. See 28 U.S.C. § 1367(a).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 3, 2000

cc:  Nancy Richards-Stower, Esq.
     Linda S. Johnson, Esq.

19