Violet WATSON, Plaintiff,

v.

ADECCO EMPLOYMENT SERVICES, INC. & *School Board of Brevard County, Florida*, Defendants.

**Pamella Marriott, Plaintiff,**

v.

**Adecco Employment Services, Inc. & School Board of Brevard County, Florida, Defendants.**

Nos. 6:01–CV–1268–ORL–31JGG, 6:01–CV–1269–ORL–31JGG.

United States District Court, M.D. Florida, Orlando Division.

March 6, 2003.

Jerry H. Trachtman, Esq., Law Office of Jerry H. Trachtman, P.A., Barry K. Baker, Esq., Boyd & Baker, P.A, Melbourne, FL, for plaintiff.

Alex P. Rosenthal, Esq., Reimer & Rosenthal LLP, Weston, FL, Michael H. Bowling, Esq., Bell, Leeper & Roper, P.A., Orlando, FL, for defendants.

## ORDER

PRESNELL, District Judge.

This cause comes for the Court's consideration on the following motions and memoranda:

1) Defendant School Board of Brevard County, Florida's Motion for Summary Judgment (Case No. 1269, Doc. 28), and Memorandum of Law in Support (Case No. 1269, Doc. 29), as well as Plaintiff Pamella Marriott's Opposition thereto (Case No. 1269, Doc. 48);

2) Defendant Adecco Employment Services, Inc.'s Motion for Summary Judgment (Case No. 1269, Doc. 33), and Memorandum of Law in Support (Case No. 1269, Doc. 34), as well as Plaintiff Pamella Marriott's Opposition thereto (Case No. 1269, Doc. 52);

3) Defendant School Board of Brevard County, Florida's Motion for Summary Judgment (Case No. 1268, Doc. 25), and Memorandum in Support (Case No. 1268, Doc. 26), as well as Plaintiff Violet Watson's Opposition thereto (Case No. 1268, Doc. 44); and

4) Defendant Adecco Employment Services, Inc.'s Motion for Summary Judgment (Case No. 1268, Doc. 30), and Memorandum of Law in Support (Case No. 1268, Doc. 31), and Plaintiff Violet Watson's Opposition thereto (Case No. 1268, Doc. 45).

The Court heard oral argument on February 25, 2003.

## I. Background

In October 1999, Adecco Employment Services, Inc. ("Adecco"), a temporary employee placement service,[1] hired both Plaintiffs as temporary employees. Meanwhile, Adecco and the School Board of Brevard County, Florida (the "School Board"), had a contract, whereby Adecco agreed to provide temporary employees upon the School Board's request. Pursuant to that contract, the School Board had complete discretion to terminate a temporary employee's service. (Yandura Affs., at ¶ 6 and at Attachment 1).[2] In November 1999, the School Board requested from Adecco temporary cafeteria food line servers for an undetermined period of time at Southwest Middle School (the "School"). Adecco thus assigned Plaintiffs to temporarily perform cafeteria food line services for a shift to be determined by the School.

Once at the School, Lucille Arnone, the School Board's cafeteria manager, trained Plaintiffs for their job assignments and supervised them. (Watson Dep. at 12, 14; Marriott Dep. at 19–20).[3] Adecco, however-er, issued the paychecks to Plaintiffs based on the hourly wages they earned at their assignments and withheld from those paychecks taxes and Social Security. Although Adecco issued general guidelines about appropriate attire,[4] Arnone dictated the specific requirements regarding the cafeteria food server uniform, and provided parts of the uniform to each Plaintiff.

In December 1999, Arnone put up Christmas-related decorations and played Christmas music in the School's cafeteria. Arnone also instructed the cafeteria food line servers to don Santa hats as part of their work uniforms.[5] Arnone instructed both Plaintiffs at different times and under different circumstances[6] to wear the Santa hats, but on December 8, 1999, both Plaintiffs objected to wearing the hats for the religious reason that they were practicing Jehovah's Witnesses and did not celebrate Christmas.[7]

On that same day, Arnone phoned Adecco to report the Plaintiffs' religious objections to wearing the Santa hats. Arnone

1. Adecco's only permanent employees work in their offices performing sales and administrative functions. Plaintiffs do not allege that they were permanent employees of Adecco. The allegations herein involve a franchise-run Adecco office branch d/b/a/ Creative Employment Services, Inc.

2. The affidavits of Bernard Yandura, president of Creative Employment Services, Inc., and branch manager of the Melbourne Adecco office, were filed at Document 37 in original Case Number 1268 and at Document 38 in original Case Number 1269. The two affidavits dealing with the two Plaintiffs are identical in substance.

3. Marriott's deposition was filed at Document 40 in original Case Number 1269. Watson's deposition was filed at Document 38 in original Case Number 1268.

4. Tamara Wallace, an Adecco office assistant at the relevant time, admits that she told Plaintiffs to wear, for example, shirts with sleeves, no shorts, closed-toed shoes, and some sort of head gear, such as a baseball cap or hair net. (Wallace Dep. at 16). Wallace's deposition was filed both in original Case Number 1269 at Document 30, Exhibit 4, and in original Case Number 1268 at Document 27, Exhibit 4.

5. The uniform consisted of an apron, white pants, red shirt, and head gear, such as a white hair net. Arnone provided Watson with all of the above (Watson Dep. at 14), while Marriott received from Arnone only the apron. (Marriott Dep. at 19). Arnone provided both Plaintiffs with the Santa hats.

6. Both Plaintiffs admit that no one from Adecco instructed them to wear the Santa hats. (Watson Dep. at 61; Marriott Dep. at 20).

7. Watson testified that Arnone told her it was "her rules" and "her kitchen" and that the hat was part of the required uniform. (Watson Dep. at 21).

spoke to a female Adecco agent,[8] who asked to speak with each Plaintiff. In separate conversations, the Adecco agent asked each Plaintiff what happened. Later, Sheila Koubek, Adecco's personnel placement manager, contacted Larry Henshaw, the School Board's Operations Specialist, to discuss an accommodation for Plaintiff's religious objections. (Koubek Affs. at ¶ 4). Henshaw agreed to allow Plaintiffs to wear red baseball caps instead of the Santa hats. (*Id.* at ¶ 4). Koubek then phoned Arnone to suggest the red baseball cap alternative, and Arnone agreed to allow the accommodation. (*Id.* at ¶ 4). Arnone informed both Plaintiffs separately of the red baseball cap idea, and Plaintiffs agreed to that accommodation.[9] No party disputes that Plaintiffs

and Arnone left work on December 8, 1999, assuming that an accommodation had been reached.

The facts surrounding the following day's events are, however, heavily disputed. Plaintiffs contend that as they were getting ready for work on December 9, 1999, at their respective homes, they each received a phone call from an unidentified and unknown Adecco female agent, who advised them not to report to work at the School. Plaintiffs both asked the reason for this decision, and the Adecco agent allegedly replied, "they [the School] don't want you anymore." (Marriott Dep. at 38–39 [10]; Watson Dep. at 24 [11]). The agent also allegedly told Plaintiffs that Adecco would place them in other positions after the holidays [12] (Marriott Dep. at 39), or in

---

**8.** Arnone testified at her deposition four years after the events at issue that she could not recall for certain the female with whom she spoke. (Arnone Dep. at 24). Adecco Personnel Placement Manager Sheila Koubek stated in her affidavit, however, that it was her whom Arnone notified on December 8, 1999, of the Santa hat concerns. (Koubek Affs. at ¶ 3). The Koubek affidavits were filed in original Case Number 1268 at Document 34 and in original Case Number 1269 at Document 37.

**9.** Koubek testified that she also spoke with Watson, who agreed to wear the red baseball cap. (Koubek Aff., Case No. 1268 at ¶ 4). Koubek did not speak directly with Marriott, who was unavailable at the time, but asked Watson to have Marriott call if she had any problem with the accommodation. (Koubek Aff., Case. No. 1269 at ¶ 5). Marriott never phoned Koubek back to report any problem. (*Id.* at ¶ 6).

**10.** Specifically, Marriott's exchange was as follows:

Q: You didn't come to work the next day. Tell me . . . why you didn't.

A: I was in the process of getting ready for work in the morning [on December 9, 1999], and I got a telephone call from Adecco. A lady was on the line.

Q: Do you recall . . . who that lady was?

A: No, I don't remember her name.

. . .

A: But she said do not report to work at Southwest. So I said, why, because we decided on the red [baseball] cap. And she said, it's not because of your work or anything, but they do not want you anymore. . . .

Q: Okay. Did you inquire of Adecco at that time whether you'd be placed somewhere else?

A: No. They were saying about putting us someplace . . . after the holidays or something like that, but they didn't get back to me.

**11.** Watson's exchange was as follows:

A: Well, the morning, the next morning when I supposed to report for work, I was dressed waiting [for my ride] . . . and I got a phone call. It was from Adecco telling me not to report for work this morning.

I say, why? They say, well, they don't want you anymore. But we see a place for you where thy don't celebrate Christmas.

Q: Do you know who you were speaking to? Was that Tammy [Wallace], or was it somebody else . . . ?

A: I don't know, but I keep saying Tammy.

**12.** Marriott told Adecco that she only wanted to work within the school system. (Marriott Dep. at 12).

a place that did not celebrate Christmas (Watson Dep. at 24). Plaintiffs admit that they never contacted Adecco about their availability to work.[13] (*Id.* at 39, 66; Marriott Dep. at 63). Moreover, Watson did not phone Arnone or the School Board about the situation, (Watson Dep. at 25–26), but Marriott claims she called the School's Vice Principal the following day. (Marriott Dep. at 40–41). Neither Plaintiff contends that Adecco terminated them as Adecco temporary employees.

Meanwhile, Adecco denies that one of its agents phoned both Plaintiffs to tell them not to report to work and points to Adecco computer records of Plaintiffs' work histories, which show that Plaintiffs separately expressed to Adecco Sales Representative Manager Cher Malone[14] on the morning of December 9, 1999, their desire not to return to their School positions due to religious objections. (Employee Work Histories of Marriott and Watson[15]). Moreover, Adecco's records show that an agent told Plaintiffs she would try to locate schools that did not celebrate Christmas and that in the beginning of 2000, Adecco offered both Plaintiffs other temporary positions, which that Plaintiffs turned down for various reasons. (Wallace Dep. at 19; Wallace Aff. at ¶ 4, 6; *see also* Employee Work Histories of Marriott and Watson).

The School Board has yet another take on the facts. Arnone testified that she was surprised when Plaintiffs did not report to work on December 9, 1999, as she thought all parties had agreed that Plaintiffs would wear red baseball caps instead of Santa hats. Arnone simply assumed that because Plaintiffs did not return to the School, Adecco[16] had decided to assign both Plaintiffs elsewhere. (Arnone Dep. at 33–34).[17]

Plaintiffs thus brought separate actions against Adecco and the School Board. Both Plaintiffs alleged religious and racial discrimination under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992.[18] Plaintiffs since have stipulated to voluntarily dismiss the racial discrimination claims, and the two cases were consolidated *sua sponte* by order of the Court.

## II. Standard of Review

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

**13.** In its briefs, Adecco cited its written policy, which requires a temporary employee to report her availability to Adecco or she will be deemed to have voluntarily quit her contract with Adecco after a period of time. The policy was filed as Exhibit 1 to Document 36 in original Case Number 1268.

**14.** Malone was not deposed. However, Wallace testified that Malone told her that Plaintiffs were not returning to work at the School and thus Wallace would have to find them new assignments. (Wallace Dep. at 21).

**15.** These work histories were filed as Exhibit 3 to Document 30 (Marriott) in original Case Number 1269 and Exhibit 3 to Document 27 (Watson) in original Case Number 1268.

**16.** Wallace testified, however, that Adecco never has removed a temporary employee from a job without being asked to do so by the client. (Wallace Dep. at 17–18).

**17.** Arnone's deposition was filed in both original Case Numbers 1268 and 1269 as Document 27, Exhibit 1, and at Document 30, Exhibit 1, respectively.

**18.** Federal case law addressing Title VII claims applies with equal force to the FCRA, which is patterned after Title VII. Hence, the Court will limit its analysis herein to Title VII. *Joshua v. City of Gainesville,* 768 So.2d 432, 435 (Fla.2000).

(1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323, 106 S.Ct. 2548. In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the record presents factual issues, the court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[19]

### III. Analysis

The Court first will analyze the admissibility of contested portions of Plaintiffs' deposition testimonies. Then, the Court will separately address the liability of each Defendant.

### A. Admissibility of Plaintiffs' Deposition Testimonies

Although neither Defendant has moved to exclude portions of Plaintiffs' deposition testimonies, Defendants suggest in their separate summary judgment motions that portions of the testimonies would not be admissible at trial and therefore should not be considered on summary judgment. There are two relevant statements at issue: 1) the statements made by an unknown, unidentified female Adecco employee summarizing what an unknown, unidentified School Board person(s) told her, i.e., that "they" do not want Plaintiffs anymore; and 2) the statements made by the same unknown, unidentified female Adecco agent regarding job referrals after the holidays.

Generally, a court cannot consider inadmissible hearsay[20] on a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322–23 (11th Cir.1999). Rather, deposition testimony, just like affidavits, in support or opposition to a summary judgment motion, must set forth facts as would be admissible in evidence. *Id.* (citing the principle set forth in Federal Rule of Civil Procedure 56(e)). Although certain circumstances merit a less-than-rigid application of that rule, *id.,* the circumstances posed in the instant situation do not fall into the less-than-rigid exception, as explained below.

Plaintiffs assert that the first statements by Adecco about the School Board's desire that Plaintiffs not return are not hearsay because the Adecco employee's statements are not being offered for the truth of the matter asserted. Rather, Plaintiffs assert without any legal support that they are being offered for the effect they had on Plaintiffs, i.e., they did not return to work at the School on December 9, 1999, because of what the Adecco employee told them.[21] In reality, Plaintiffs do

---

**19.** All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**20.** "Hearsay is a statement, other than one made by the declarant while testifying in a trial or hearing, offered into evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c).

**21.** Because Adecco told Plaintiffs that "they," allegedly meaning the School Board, did not want Plaintiffs as employees anymore, the statements contain a double hearsay problem. *Zaben v. Air Prods. & Chem., Inc.,* 129 F.3d 1453, 1457 (11th Cir.1997) (noting that both levels of hearsay must be excepted from the hearsay rules to be admissible). The Federal Rules of Evidence instruct: "[h]earsay included within hearsay is not excluded under the

offer the statements for the truth of the matter asserted. Plaintiffs' entire case rests on the substance of these statements that "they" did not want them to work at the School anymore. As such, the first statements contained in Plaintiffs' depositions are essentially being offered for the truth and are inadmissible as hearsay unless they fall into one of the Federal Rules' exceptions.

Plaintiffs next contend that the statements are not hearsay because they are admissions by party opponents offered either as "the party's own statement, in . . . a representative capacity," Fed.R.Evid. 801(d)(2)(A), or as "a statement of which the party has manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B). In contrast to *King v. Auto, Truck, Indus. Parts & Supply ("ATI"), Inc.*, 21 F.Supp.2d 1370 (N.D.Fla.1998), the statements at issue here cannot be admitted under Rule 801(d)(2)(A). At issue in *King* was the deposition testimony of the plaintiffs, indicating that the president of ATI told the manager of ATI that he would never place a female in a particular job. *Id.* at 1381. The court concluded that the statements made by the ATI president to the ATI manager were statements of a party opponent and thus not hearsay under Federal Rule of Evidence 801(d)(2)(A). *Id.* at n. 9. In the case at bar, Plaintiffs did not know the identity of the Adecco employee, much less her role in the company and hence Rule 801(d)(2)(A) is not satisfied.

In addition, the statements are not admissible under Rule 801(d)(2)(B) because no record evidence exists that either Defendant manifested an adoption or belief in the truth of the statements. *United States v. Amer. Tel. & Tel. Co.*, 516 F.Supp. 1237, 1239 (D.D.C.1981) (holding that a party opponent "cannot be held to have adopted the contents of documents in the files of others, no matter how aligned in interest they might be, without specific proof of such adoption proof that, as the Court understands it, is not present here."). In fact, in this instance Defendants deny that any Adecco or School Board employee told Plaintiffs that they were no longer wanted at the School.

Similarly, the second statements at issue—the Adecco agent's statements that Plaintiffs would not be placed in new assignments until after the holidays—are inadmissible as hearsay for the same reasons as stated above.[22]

Indeed, neither Rule 801(d)(2)(A) nor (B) provide a basis to admit Plaintiffs' deposition testimonies, and Plaintiffs offer no other exception under the Federal Rules[23] to admit the testimonies. Thus,

---

hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R.Evid. 805. As discussed *infra*, Plaintiffs cannot clear the first hearsay hurdle and thus it is moot whether Plaintiffs can clear the second hearsay hurdle. Nevertheless, the Court sees no basis to admit a statement "they" made without further information about who "they" are. *Id.*

**22.** These statements do not, however, pose a double hearsay problem, as did the first statements.

**23.** Although not offered as an exception, the Court notes that the statements also would

not be admissible as a "statement by the party's agent or servant concerning a matter within the scope of agency or employment, made during the existence of the relationship" under Rule 801(d)(2)(D), for there is no record evidence that the Adecco phone caller was an agent speaking within the scope of her agency or employment. *International Telecomm. Exch. Corp. v. MCI Telecomm. Corp.*, 892 F.Supp. 1520 (N.D.Ga.1995) (holding that plaintiff failed to establish an "evidentiary foundation from which the Court can determine whether the phone caller was an MCI employee," and thus the plaintiff could not avail himself of Rules 801(d)(2)(C) or (D)).

the contested portions of Plaintiffs' deposition testimonies are inadmissible hearsay and the Court cannot consider them in this summary judgment decision.

## B. Liability of Defendants

Adecco asserts it is entitled to summary judgment in its favor because: 1) as a temporary employment agency, it cannot be held liable for any religious discrimination committed by a client; 2) it did not discriminate against either Plaintiff in job placement; and 3) Plaintiffs would not, in any case, be entitled to recover damages.

### 1. Adecco

#### (a) Title VII Employer

Adecco contends that it, as a temporary employment agency, cannot be considered Plaintiffs' "employer" for Title VII purposes. Adecco also claims that even if it can be considered its Title VII "employer," it cannot be held liable for any discriminatory discharge by its client.

Title VII prohibits an "employer ... to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). The statute defines "employer" as "a person [24] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." *Id.* at § 2000e(b).[25] Whether a defendant meets the statutory definition of "employer" poses a threshold jurisdictional matter under Title VII. *Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1340 (11th Cir.1999) (citing *Virgo v. Riviera Beach Assoc., Ltd.,* 30 F.3d 1350, 1359 (11th Cir.1994)).

■ Although the definition of "employer" under Title VII is "considerably broader than it is under common law," *Lyes,* 166 F.3d at 1341, a court still must look to common law agency principles to determine if "employer" status exists. *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (applying traditional agency principles to determine whether a hired party is an employee under ERISA).

The Eleventh Circuit has, in keeping with this liberal construction, considered three circumstances—two of which are irrelevant here—in which two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's "employer" comes within the coverage of Title VII. *Lyes,* 166 F.3d at 1341 (inquiring whether it was proper to aggregate the number of employees for the purposes of the Title VII's fifteen employee requirement).

■ Here, Plaintiffs urge liability under the common law joint employer theory of agency. Joint employer liability arises when "two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes,* 166 F.3d at 1341; *see also Scelta v. Delicatessen Support Servs., Inc.,* 57 F.Supp.2d 1327, 1352 (M.D.Fla.1999) (citing *Virgo,* 30 F.3d at 1360, for the definition of joint employer liability as two business entities who are separate in fact but "share or co-

---

**24.** "Person" is defined as "one or more individuals ... partnerships, associations, corporations ...." 42 U.S.C. § 2000e(a).

**25.** Title VII separately defines "employment agency" as:

any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.
42 U.S.C. § 2000e(c).

determine those matters governing the essential terms and conditions of employment.").[26] Even under a broad definition of "employer," a temporary employment agency such as Adecco cannot be considered a joint employer under these circumstances.

To date, no Florida court has spoken definitively on the issue, *see Neal v. Manpower Int'l, Inc.*, 2001 WL 1923127 at *7 n. 11 (N.D.Fla. Sept.17, 2001), nor have very many other courts. In *Astrowsky v. First Portland Mortgage Corp.*, 887 F.Supp. 332 (D.Me.1995), for example, the court found, based on the lack of the employment agency's control over the plaintiff temporary

worker that no joint employer relationship existed between the employment agency and the client and thus that the agency was not the plaintiff's Title VII employer. *Id.* at 336. In *Kellam v. Snelling Personnel Services*, 866 F.Supp. 812, 815–16 (D.Del.1994),[27] the court analyzed whether temporary employees · were considered "employees" of the temporary employment agency for purposes of meeting the fifteen employee requirement under prohibited employer practices. The court held that the temporary workers were not "employees" of the agency for Title VII purposes for a host of reasons[28] but primarily because the agency did not control the man-

**26.** Although *Virgo* noted that whether one corporation retained sufficient control "is essentially a factual question," 30 F.3d at 1360, this factual question pertains to a fundamental question of jurisdiction and hence is proper for the Court to decide. Notably, *Virgo* did not adjudicate whether a temporary employment agency was a joint employer, but rather whether a management corporation was a joint employer with a partnership. *Id.* at 1359–62.

**27.** Other district courts have assumed only *arguendo* that a temporary employment agency could be considered an "employer" for Title VII purposes but based their ruling on other grounds. *See, e.g., Neal*, 2001 WL 1923127 at *8–10; *Riesgo v. Heidelberg Harris, Inc.*, 36 F.Supp.2d 53, 58 (D.N.H.1997). For example, *Neal* assumed *arguendo* that Manpower, the temporary employment agency at issue, was an "employer" under the Florida Civil Rights Act, but held that the facts at bar presented no basis to hold Manpower liable for the alleged sexual harassment by Manpower's client. *Id.* at *8–10. *Neal* cited *Mullis v. Mechanics & Farmers Bank*, 994 F.Supp. 680 (M.D.N.C.1997), in which the temporary employment agency did not even contest that it fell within Title VII's definition of "employer" on the pending motion to dismiss. *Id.* at 685. The court thus found, with little analysis, that the plaintiff's complaint set forth a basis to find the agency was her employer based on the loaned servant doctrine. *Id.*

By contrast, *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F.Supp. 344

(S.D.N.Y.1984), did not specifically inquire for purposes of the pending motion to dismiss whether the employment agency was an employer, for the agency in that case was not even named as a defendant. The question before the *Amarnare* court was whether Merrill Lynch was a joint employer of the employment agency, and for the purpose of resolving that issue, the court simply assumed the agency was an employer. *Id.* at 349.

Notably, *Astrowsky* distinguished *Amarnare*, because *Astrowsky* required the court to "analyze the control the employment agency has over the worker," whereas *Amarnare* was required to analyze the control the agency's client had over the worker. 887 F.Supp. at 336. Of course, *Astrowsky* is not on all fours with the case at bar either; in *Astrowsky*, the worker was leased on a long-term basis to the client and was thus "in essence, a permanent employee" of the client employer. *Id.* at 336–37.

**28.** The other reasons included: the agency did not provide the work instrumentalities or tools to the temporary workers; the workers did not perform work as part of the agency's regular business; the workers did not work on the agency's property; the workers did not have to accept the work assignments the agency offered nor were their hours, pay rates, or work assignments controlled by the agency, and; the agency provided no employee benefits to the workers. *Kellam*, 866 F.Supp. at 815–16.

ner and means of the employees' work. 866 F.Supp. at 815–16.[29] Similarly, in *Williams v. Caruso*, 966 F.Supp. 287 (D.Del.1997), the court held that plaintiff temporary worker of Western Staff Services ("Western")—who was assigned to work for Western's client Law Access Inc.—could not sue Western for unlawful employer practices because Western played no role in the manner and means in which the plaintiff worked. *Id.* at 296 (citing *Kellam*). In so finding, the *Williams* court noted that the plaintiff was not trained or supervised by Western nor was he accountable to Western on a daily basis. *Id.* The fact that the plaintiff received his paycheck from Western was not by itself sufficient to support a finding that Western was plaintiff's employer under agency principles. *Id.*

This Court finds persuasive the reasoning of *Astrowsky*, *Kellam*, and *Williams*,[30] and holds that Adecco, as a temporary employment agency exercising no control over Plaintiffs' responsibilities or duties once on assignment, cannot be considered the Title VII employer of these temporary employees. Indeed, nothing in the record would allow a factfinder to determine that the School Board and Adecco co-deter-

mined the essential terms and conditions of Plaintiffs' employment at the School. *Scelta,* 57 F.Supp.2d at 1352 (noting that whether sufficient control is maintained must be supported by facts in the record). In fact, the record reveals the opposite. Arnone trained and supervised Plaintiffs and dictated their work uniform. Plaintiffs reported to Arnone, not Adecco, on a daily basis. Plaintiffs did not perform any task for Adecco related to Adecco's regular business, which is providing temporary employees to clients. Plaintiffs did not have to accept the job referrals offered by Adecco, who also did not control Plaintiffs' hours or assignments once referred. The mere fact that Adecco issued Plaintiffs their paychecks is not alone sufficient for Title VII employer status. 966 F.Supp. at 296.

For these reasons, the Court lacks jurisdiction over all claims against Adecco, who is not Plaintiffs' "employer" for Title VII purposes under the urged joint employer theory of liability.

### (b) Liability of Adecco for School Board's Actions

██ Even if Adecco could be considered Plaintiffs' employer under Title VII, it can-

---

**29.** The court further held that "the practices prohibited to 'employment agencies' do not encompass the practices prohibited to 'employers' but rather employment agencies are prohibited only from discriminatory referrals as regards their temporary employees." 866 F.Supp. at 817 (citing *Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198–99 (5th Cir.1994)).

**30.** Although the *Williams* court did not analyze joint employer liability, the court noted that its conclusion was "bolstered by the framework of Title VII, which distinguishes between unlawful employer practices and unlawful employment agency practices" and held that "Western is subject to suit as an 'employer' only by its permanent employees, not the temporary workers it places in other employment." 966 F.Supp. at 296. If courts

permitted otherwise, then "the prohibitions relating to employment agencies would be rendered superfluous" *Id.* (citing *Greenlees*, 32 F.3d at 198–99).

Indeed, the statute specifies that:
It shall be unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(b).
In the instant case, Plaintiffs' discriminatory failure to refer allegation against Adecco is treated by both parties and the Court as a separate allegation from the instant claim of discriminatory discharge.

not here be held liable under any of the possible circumstances suggested. For a joint employer to be held liable for discriminatory conduct, a plaintiff must show that the joint employer knew or should have known of the conduct and failed to take corrective measures within its control. *Neal,* 2001 WL 1923127 at *9.

■ Here, Plaintiffs have shown that Adecco knew that Plaintiffs objected to wearing the Santa hats. Plaintiffs have not shown, however, that Adecco failed to take corrective measures within its control. First, if Plaintiffs' testimony is admissible (it is not) that Adecco told Plaintiffs that the School Board did not want them to report anymore, then it is clear only that Adecco conveyed the School Board's wish. The Court cannot allow a case against Adecco to proceed based on evidence showing that Adecco simply reported the wishes of its client, for mere conveyance does not show that Adecco took any adverse action against Plaintiffs. *Neal,* 2001 WL 1923127 at *9 (finding that the client, not the employment agency, was responsible for the adverse employment action of removing the employee from the client's workplace, because the agency removed the employee only at the client's behest); *Mullis,* 994 F.Supp. at 686–87 (holding that the plaintiff failed to state a cause of action for retaliation under Title VII because the employment agency took no adverse employment action when it merely instructed the plaintiff, at the client's request, not to return to her assignment at the client's workplace).

Second, if Adecco knew its client—the School Board—had discriminated against its temporary employees, then it would not violate Title VII by removing, on its own accord,[31] the employees from that discriminatory assignment. In fact, such action would be an appropriate accommodation[32] to correct the client's allegedly discriminatory conduct. Moreover, the corrective measures available to Adecco[33] are limit-

---

31. The only scintilla of evidence to support the inference that Adecco decided to re-assign Plaintiffs elsewhere stems from the School Board's Answers to Watson's Interrogatory Number 7 as cited in partial form in Plaintiffs' Oppositions to Adecco (Doc. 52, Case No. 1269, and Doc. 45, Case No. 1268). According to Plaintiffs' briefs, the School Board was asked the facts upon which Arnone relied in her written statement of September 29, 2000, which states: "[I] contacted Adecco and they made the decision to assign both employees elsewhere." The School Board answered that "This factual assertion is based upon Ms. Arnone's recollection of a conversation or conversations with Adecco in December of 1999." (Doc. 52 at 6; Doc. 45 at 7).

First, Watson's Interrogatories and Answers are not part of the record. Second, even if they were, Arnone further explained in her deposition that the only reason she believed that Adecco decided to reassign Plaintiffs was because "they didn't return to my kitchen." (Arnone Dep. at 33). Watson's counsel asked her, "That was an assumption that you made?" and Arnone answered "Yes, sir." (*Id.* at 34). Plaintiffs contend that this Interrogatory creates a material issue to be resolved by a jury, but given that it is not record evidence and not probative of any religious discrimination by Adecco, it does not provide a basis on which to deny summary judgment as to Adecco.

32. Plaintiffs are not here alleging failure to provide religious accommodation.

33. Indeed, Adecco did take corrective measures. *See, e.g., Riesgo,* 36 F.Supp.2d at 58–59 (granting summary judgment in favor of a temporary employment agency because no reasonable factfinder could find that the agency's response to plaintiff's complaints was unreasonable). In *Riesgo,* the court found that the temporary employment agency promptly reported the plaintiff's complaint to the client, phoned the plaintiff to follow up on whether corrective action had been taken, and inquired if plaintiff wanted to cease the assignment. 36 F.Supp.2d at 58. In the instant case, Adecco responded to Plaintiffs' religious objections by asking to speak with them by phone. Thereafter, Koubek, an Adecco agent, contacted the School Board to inquire about an accommodation for Plaintiffs. All relevant parties agreed that Plaintiffs could and would

ed, for Adecco, a private company, cannot force its client, another private company, not to discriminate or run its business in a certain manner. *See, e.g., Riesgo v. Heidelberg Harris, Inc.,* 36 F.Supp.2d 53, 58 (D.N.H.1997) (claiming it would "impose a wholly unrealistic burden" on a temporary employment agency—which exercised no control over plaintiff's activities at the client's workplace nor over the client's employees—to require the agency to place pressure upon its client to fire the client's permanent employee who allegedly committed the discriminatory acts).

Of course, the facts do not show that Adecco on its own accord removed Plaintiffs from the School Board's employ. Rather, the only admissible relevant evidence in the record—Adecco's business records[34]—shows that Plaintiffs did not want to return to work at the School and that they quit their assignments at the School. Under that circumstance, where no adverse employment action was taken by either Defendant,[35] summary judgment would be appropriate not only as to Adecco but also as to the School Board.

### (c) Liability of Adecco for Failure to Refer until After the Holiday Season

Adecco further urges summary judgment for any claim that Adecco is liable for religious discrimination for its failure to try to place Plaintiffs in other positions until after the holidays.

Adecco first denies that it failed to try to place Plaintiffs. Although Adecco's business records reveal that Adecco only tried to place Plaintiffs in early 2000, the Court must grant summary judgment for Adecco. Again, the only evidence on which Plaintiffs rely is their own testimonies regarding the December 9, 1999, phone call from Adecco to Plaintiffs in which some unknown Adecco employee said she would place them after the holidays or in a place that did not celebrate Christmas. As discussed above, those testimonies contain inadmissible hearsay which cannot be considered on summary judgment, and in any event, the testimonies do not show that Adecco's statements were discriminatory. Plaintiffs have no evidence to support a discriminatory failure to refer claim

---

wear red baseball caps instead of Santa hats to work the next day. These corrective measures would prevent Adecco from being held liable as a joint employer for the School Board's alleged actions.

**34.** Although Plaintiffs contend that the Adecco business records are not admissible, the Court disagrees and finds they would be admissible at trial under Federal Rule of Evidence 803(6), which provides that a "report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, [is excepted from the hearsay rule] if [the report is] kept in the course of a regularly conducted business activity ... as shown by the testimony of the custodian or other qualified witness, ..." *See also E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 926 (11th Cir.1990).

In this case, Plaintiffs deposed only one Adecco employee, Tamara Wallace, who testified that such records, which are a regular business practice, are made contemporaneously with the conversation ninety-nine percent of the time and that former Adecco Sales Representative Manager Cher Malone made the notes at issue here. (Wallace Dep. at 23–25). These records would therefore be admissible at trial under the records of regularly conducted activity exception to the hearsay prohibition, and the Court may consider them in this summary judgment determination.

**35.** Indeed, Plaintiffs do not allege that Adecco terminated them as temporary employees. The only adverse employment action alleged is that the School Board and/or Adecco terminated them from their temporary assignment as cafeteria food line servers for the School Board.

against Adecco, and summary judgment is appropriate.

### 2. School Board

The School Board moves for summary judgment because Plaintiffs cannot meet their *prima facie* burden for failure to provide reasonable accommodation of religious needs. Plaintiffs' actual claims are based on discriminatory discharge, not failure to provide reasonable accommodation, but nevertheless the Court must grant the School Board's motion for summary judgment for the following reason.

As above, Plaintiffs rely almost exclusively on their own testimonies that Adecco phoned them and told them the School Board did not want them anymore. Because the Court ruled above that these testimonies would be inadmissible at trial because they contain two levels of inadmissible hearsay, the Court cannot consider them on the School Board's summary judgment motion. Plaintiffs have produced no other record evidence in support of their allegations that the School Board discharged them for discriminatory reasons, and hence, the Court must grant summary judgment in favor of the School Board.[36]

## IV. Conclusion

---

**36.** Even if Plaintiffs' testimony was admissible, Plaintiffs' claims could not survive summary judgment. To prove a *prima facie* case of religious discrimination, Plaintiff must show by either direct or circumstantial evidence that: 1) the practice at issue is religious in nature; 2) Plaintiff called the religious practice to the employer's attention; and 3) the Plaintiff's discharge was based on those religious practices. *Lubetsky v. Applied Card Sys., Inc.,* 296 F.3d 1301, 1305 (11th Cir. 2002), *cert. denied,* — U.S. —, 123 S.Ct.

872, 154 L.Ed.2d 776 (2003) (citing *Beasley v. Health Care Serv. Corp.,* 940 F.2d 1085, 1088 (7th Cir.1991)).

The School Board does not dispute that Plaintiffs' practices regarding wearing Christmas attire are religious in nature and that Plaintiffs called the religious practice to Arnone's attention. Plaintiffs, however, have presented no evidence, direct or circumstantial, to show that the discharge from the School Board was based upon those religious practices.