**Jose LIMA, Plaintiff,**

v.

**ADDECO and/or Platform Learning, Inc., Defendant.**

No. 07 Civ. 6573(DC).

United States District Court, S.D. New York.

June 9, 2009.

---

Jose Lima, Bronx, New York, pro se.

Jackson Lewis LLP, by Matthew Steinberg, Esq., Diane Windholz, Esq., New York, NY, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

In this employment case, *pro se* plaintiff Jose Lima ("Lima") alleges that defendant Adecco USA, Inc. ("Adecco")[1] discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Adecco moves for summary judgment dismissing the complaint. For the reasons that follow, Adecco's motion is granted and the complaint is dismissed.

### BACKGROUND

#### A. The Facts

The facts are drawn from the pleadings, the parties' declarations, depositions, and other documentary evidence. For purposes of this motion, the facts are construed in the light most favorable to Lima, and conflicts in the evidence have been resolved in his favor.

#### 1. The Parties

From approximately October 2004 to February 2005, Lima was employed as a Supplemental Education Service ("SES") instructor in an after-school tutoring program held at different New York City public schools. (*See* Lima Dep. at 25). The program was administered by a company called Platform Learning, Inc. ("Platform").[2] (Young Aff. ¶ 2). Lima worked for the program at two New York City schools, Public School 192 ("P.S. 192") and Intermediate School 52 ("I.S. 52"). He was also employed full-time as a teacher in the New York City public school system. (Lima Dep. at 34).

Adecco is a placement agency that provides temporary and full-time services to clients throughout the country. (Crothal Aff. ¶ 3). It had a "business relationship" with Platform, providing "payroll and re-

---

1. Defendant's name is spelled incorrectly in the caption. It is Adecco USA, Inc., not "Addeco."

2. Platform is named as a defendant in this action, but Lima was unable to serve Platform with the summons and complaint.

lated administrative services for Platform's SES program." (*Id.* ¶ 7).

### 2. *Adecco and Platform's Roles*

The parties dispute whether Lima was hired by Adecco or Platform. It is undisputed that Lima completed his new hire paperwork for the SES Instructor position through Adecco. (*See* Lima Ex. A). Adecco certified Lima's employment eligibility, signing his federal I–9 and W–4 forms as his "employer." (*Id.*). Lima also signed an "Employee Acknowledgment and Confidentiality and Non–Disclosure Agreement" with Adecco, in which he "acknowledge[d] and agree[d] that he [was] an employee of Adecco and [was] not an employee of any Client of Adecco." (*Id.*). In addition, Adecco administered payroll for Platform and made direct deposits into Lima's bank account during his employment as a Platform SES instructor. (Lima Exs. I, J). Adecco did not supervise or assess Lima or other SES instructors' work; nor did it have any role in designing the SES curriculum, assigning instructors to schools, or disciplining instructors. (Rodriguez Aff. ¶¶ 4, 6; Crothall Aff. ¶¶ 8, 10, 13).

Lima was supervised by Platform employees. (Young Aff. ¶ 8; Rodriguez ¶¶ 1, 13). When Platform managers sought to end an SES instructor's employment with the program, they directed Adecco "to remove the instructor from payroll and to cease issuing his or her paychecks." (Rodriguez Aff. ¶ 6). Lima was removed from payroll pursuant to his Platform supervisor Clayvi Rodriguez's instruction "to have

Adecco take Lima off payroll effective immediately." (*Id.* ¶ 17). Adecco did not have authority to reverse Platform's decision to terminate Lima's employment as an SES instructor. (*Id.* ¶¶ 6, 17).

### 3. *Lima's Employment*

Initially Lima was assigned to work at P.S. 192 on Tuesday and Thursday afternoons and Saturday mornings and at I.S. 52 on Wednesday and Friday afternoons. He was supervised by Platform employees at both locations. At P.S. 192, Lima was supervised by Jessica Rosa, a Platform "representative." (Young Aff. ¶ 8). Rosa is from Puerto Rico. (Lima Dep. at 17). At I.S. 52, Lima was supervised by Clayvi Rodriguez, Platform's Area Manager for the SES program. (Lima Dep. at 160–61, 191–92; Rodriguez Aff. ¶¶ 1, 13). Rodriguez is of Dominican national origin, like Lima. (Rodriguez Aff. ¶ 19).

In November 2004, Rosa removed Lima from the Saturday morning program at P.S. 192. (Lima Aff. ¶ 4). She then removed him from his remaining Tuesday and Thursday work times at P.S. 192 one month later. (*Id.* ¶ 5). Lima sought an explanation from Adecco about his removal from SES classes at P.S. 192. Ana Maria, an Adecco representative, told Lima she had never seen anyone suspended without warning. (Lima Ex. B).[3] Ana Maria helped Lima follow up with Rosa and Rosa's supervisor Bruce. Rosa told Lima he was being removed because of parent complaints to Adecco. (Lima Aff. ¶ 5; Lima Ex. B). Ana Maria, however, told

**3.** In opposition to the motion, Lima submitted his own affidavit, executed under oath. Referenced in his affidavit is his unsworn, untranslated affidavit in Spanish, dated February 18, 2005. The unsworn, untranslated affidavit refers to statements made by Ana Maria. The statements attributed to her are hearsay, if not double hearsay. Nevertheless, for purposes of deciding this motion, the

Court gives Lima the benefit of the doubt and considers the statements. Additionally, although Lima did not provide a court-certified translation, the Court has obtained a written translation of the statement from the Interpreters Office for the Southern District of New York for purposes of deciding this motion.

Lima that the "central office" had not received any complaints about him. (Lima Ex. B).

At or around this time, Rosa contacted Lima and told him to stop calling Adecco. (Lima Ex. B). She told him he was

> not going to continue in the program simply because she doesn't want [him] there, because the problem is that the Dominican believes that we are somebody, but most of us come to Puerto Rico by boat and when we establish in U.S. we think that we are something, when we don't even speak a good English, very different from they (Puertoricans) that they are American by born and speak a perfect English.

(Lima Aff. ¶ 7; Lima Ex. B). In December 2004, after being told he would no longer be teaching SES classes at P.S. 192, Lima was removed from the building by a school safety officer after refusing to leave. (Young Aff. ¶¶ 6–8; Lima Dep. at 32–35).

Though he no longer taught SES classes at P.S. 192, Lima continued to work as an SES Instructor at I.S. 52. In January 2005, Lima's supervisor, Rodriguez, told him that teachers and parents had called Adecco to complain about him. (Lima Ex. B). In February 2005, Rodriguez asked Lima not to return for the new SES cycle at Platform. (Rodriguez Aff. ¶ 17). Thereafter, Rodriguez instructed Jackie King, the liaison between I.S. 52 and Platform, "to have Adecco take Lima off payroll effective immediately." (Id.; see also Crothall Aff. ¶¶ 14, 15).

## B. Procedural History

On June 22, 2005, Lima filed a verified complaint with the City of New York Commission on Human Rights (the "Human Rights Commission"), charging Adecco and Rosa with unlawful discriminatory practices. (Steinberg Decl. Exs. A, F). The Human Rights Commission determined there was "no probable cause to believe" that Adecco and Rosa engaged in the unlawful discriminatory practices alleged. (Id. Ex. F). Lima also filed a charge with the U.S. Equal Employment Opportunity Commission which adopted the Human Rights Commission's findings, dismissed Lima's charge, and issued a right to sue letter on May 2, 2007. (Id. Ex. A).

Lima filed the complaint in this action on July 23, 2007. Discovery closed in October 2008. This motion followed.

## DISCUSSION

Adecco moves for summary judgment dismissing the complaint on the grounds that (1) it cannot be held liable for employment discrimination, as it was not Lima's employer as a matter of law; and (2) even if it was Lima's employer, Lima cannot establish a *prima facie* case of discrimination on the basis of national origin.

### A. Summary Judgment Standard

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178–79 (2d Cir.2008). In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir.2008). The non-moving party cannot, however, "es-

cape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal citations and quotations omitted).

In deciding a motion for summary judgment, the role of the Court is not to ask whether "the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because the Court's role is limited in this respect, it may not make factual findings, determine credibility of witnesses, or weigh evidence. *See Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005); *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996); *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994).

**B. *Adecco's Liability as Employer***

**A. *Applicable Law***

**1. *Title VII***

■ Title VII protects individuals from discriminatory employment practices. It is an "unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least 'in part by an "impermissible reason"—*i.e.*, that there was discriminatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Fields v. N.Y. State Office of*

*Mental Retardation & Dev'l Disabilities,* 115 F.3d 116, 119 (2d Cir.1997).

**2. *Employer Liability***

■ The existence of an employer-employee relationship is a "primary element" of Title VII claims. *Gulino v. New York State Educ. Dep't,* 460 F.3d 361, 370 (2d Cir.2006). The definition of "employer" has been construed liberally for Title VII purposes "and does not require a direct employer/employee relationship." *Goodwin v. Orange & Rockland Util., Inc.,* No. 04 Civ. 0207(WCC), 2005 WL 2647929, at *3 (S.D.N.Y. Oct. 14, 2005). Instead, the term is to be viewed "functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Gore v. RBA Group, Inc.,* No. 03 Civ. 9442(KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. March 31, 2008); *see also Gulino,* 460 F.3d at 371–72 ("common-law element of control is the principal guidepost that should be followed" when determining whether employment relationship exists); *Nelson v. Beechwood Org.,* No. 03 Civ. 4441(GEL), 2004 WL 2978278, at *3 (S.D.N.Y. Dec. 21, 2004) ("under Title VII, an employer *compensates* and *controls* an employee's work") (emphasis in the original); *Serrano v. 900 5th Ave. Corp.,* 4 F.Supp.2d 315, 316–17 (S.D.N.Y.1998) (definition of "employer" is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities") (overruled on other grounds).

■ Courts have developed different doctrines for determining when an entity is an individual's "employer" for Title VII purposes. Two doctrines are relevant in cases where two or more entities are involved in an individual's employment. First, the "single employer" doctrine ap-

plies when "two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On–Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005). Single integrated enterprises can include parent and wholly-owned subsidiary corporations or separate corporations that operate under common ownership and management. *See id.; Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 341 (2d Cir.2000). Where two entities are deemed part of a single integrated enterprise, then both entities are "subject to joint liability for employment-related acts." *Laurin v. Pokoik,* No. 02 Civ.1938(LMM), 2004 WL 513999, at *4 (S.D.N.Y. March 15, 2004); *see also Arculeo,* 425 F.3d at 198. Four factors are considered: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial support." *Laurin,* 2004 WL 513999, at *4 (citations omitted); *see also Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240–41 (2d Cir.1995) (adopting four-factor test).

 Second, the "joint employer" doctrine applies when separate legal entities have "chosen to handle certain aspects of their employer-employee relationships jointly." *Gore,* 2008 WL 857530, at *3 (citations and internal quotation marks omitted); *see also Arculeo,* 425 F.3d at 198. Here, courts look at "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" to determine whether an entity is a joint employer. *N.L.R.B. v. Solid Waste Servs., Inc.,* 38 F.3d 93, 94 (2d Cir.1994); *see also Nelson,* 2004 WL 2978278, at *4; *Laurin,* 2004 WL 513999, at *8 (key inquiry is whether entity "control[s] some aspect" of employee's work).

The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities; it has also been applied to contractors and subcontractors and other scenarios where two separate entities have control over an employee's employment. *See Nelson,* 2004 WL 2978278, at **4–5 (fact question existed as to whether subcontractor and contractor were functionally joint employers of plaintiff); *DeWitt v. Lieberman,* 48 F.Supp.2d 280, 288 (S.D.N.Y.1999) (employment agency that paid plaintiff and client entity that supervised plaintiff considered plaintiff's joint employers); *Laurin,* 2004 WL 513999, at **4–9 (fact questions existed as to whether sole proprietorship where plaintiff worked and corporation that employed proprietor were single employer and/or joint employers); *see also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 611 F.Supp. 344, 347–49 (S.D.N.Y. 1984) (utilizing common-law loaned servant doctrine to hold that plaintiff was employee of both temporary employment agency and client entity for Title VII purposes).

Even where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII. Though the Second Circuit has not ruled on the issue, other courts have found that even when a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show "that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control." *Watson v. Adecco Empl. Servs., Inc.,* 252 F.Supp.2d 1347, 1356–57 (M.D.Fla.2003). Thus in *Watson,* the court found that even if defendant Adecco, as the temporary employment agency that had placed plaintiffs as workers in a school cafeteria, were to be deemed a joint employer, it could not be liable for the school's alleged discriminatory discharge of plaintiffs, because plaintiffs could not show Adecco failed to take corrective

measures within its control. *Id.* (noting that "the corrective measures available to Adecco are limited, for Adecco, a private company, cannot force its client, another private company, not to discriminate or run its business in a certain manner"); *see also Neal v. Manpower Int'l.,* No. 00 Civ. 277(LAC), 2001 WL 1923127, at **9–10 (N.D.Fla. Sept. 17, 2001) (assuming temporary agency was plaintiff's joint employer but finding no basis for liability because agency was not responsible for tangible employment action against plaintiff); *Caldwell v. ServiceMaster Corp.,* 966 F.Supp. 33, 46 (D.D.C.1997) (no basis for liability where plaintiff failed to provide sufficient notice to employment agency about discrimination by employer).

## B. *Application*

Adecco argues the case must be dismissed because it cannot be considered Lima's employer as a matter of law. I conclude that a question of fact exists as to Adecco's status as Lima's employer but grant Adecco's motion because no reasonable jury could return a verdict for Lima on Adecco's liability for the unlawful discrimination alleged.

### 1. *Adecco's Employer Status*

■ Lima has presented sufficient evidence to raise a question of fact about Adecco's status as Lima's employer. Adecco represented itself as Lima's employer for tax and immigration purposes and signed an agreement with Lima in which Lima acknowledged his status as "employee." (Lima Ex. A). Adecco also paid Lima for his work in the Platform program, making direct deposits into Lima's bank account. (Lima Exs. I, J). These documents certainly indicate that Adecco controlled at least some aspects of Lima's terms and conditions of employment, such that a fact question exists as to Adecco's employer status.

### 2. *Employer Liability*

The analysis is not concluded by determining that fact issues exist as to Adecco's employer status. Undisputed evidence in the record also shows that (1) Platform also controlled some terms and conditions of Lima's work, and (2) only Platform employees were involved in the discrimination alleged by Lima. The question is thus whether a reasonable jury could find Adecco liable for alleged discrimination by Platform.

### a. *Liability as Joint Employer*

■ No reasonable jury could find Adecco knew or should have known about unlawful discriminatory conduct by Platform, such that Adecco may be held liable as a joint employer of Lima with Platform. First, undisputed evidence in the record shows that Platform controlled the principal terms and conditions of Lima's work. Lima does not dispute that Platform was the entity that assigned him to different schools for the SES program, supervised his work, and terminated his employment with the program. A reasonable fact-finder could only find, therefore, that Platform was also Lima's employer under the functional definition of the term. *See Gore,* 2008 WL 857530, at *4 (question is whether entity "control[s] some aspect of an employee's compensation or terms, conditions or privileges of employment").

Second, Lima's allegations of discriminatory treatment involve only conduct by Platform. Lima's primary evidence in support of his claim are alleged derogatory comments made by Rosa about Dominicans. (Lima Aff. ¶ 7). Rosa made the comments in response to Lima's queries about the reasons for his removal from SES instruction at P.S. 192. Lima further alleges that Rodriguez, his supervisor at I.S. 52, disliked him and wanted to terminate his employment because he "had a

problem at the other school and the manager from the other school told [Rodriguez] to terminate [Lima]." (Lima Aff. ¶ 10; *see also* Lopez Aff. ¶¶ 2–5). Lima does not dispute that both Rosa and Rodriguez are Platform employees.

Third, Lima does not dispute that Adecco played no role in the decision to remove him from P.S. 192, or in the decision to terminate Lima's employment as an SES instructor. Lima states he spoke to an Adecco representative about his removal from SES instructor duties at P.S. 192, and that the Adecco representative helped put him in touch with Rosa and her supervisor. (Lima Ex. B). This interaction, however, does not create a genuine issue as to Adecco's role in assessing, disciplining, and firing SES instructors. Moreover, Lima makes no indication that he informed Adecco about Rosa's discriminatory comments; nor does the record support any inference that Adecco knew or should have known about any discriminatory treatment towards Lima until after the fact. *See Caldwell*, 966 F.Supp. at 46–47 (plaintiff's vague statements to employment agency that "something funny was going on" were insufficient to provide notice to agency of discriminatory conduct by employer).

Even assuming Lima's termination from his employment as an SES instructor was motivated in part by an impermissible reason, then, Lima has not provided any evidence linking Adecco in any way with the adverse employment decision. Accordingly, Adecco cannot be held liable as a joint employer for discriminatory conduct by Platform in violation of Title VII, because Lima has presented no evidence showing Adecco "knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control." *Watson*, 252 F.Supp.2d at 1356–57.

#### b. *Liability as Single Employer*

◼ Lima claims Platform and Adecco were either the same entity or should otherwise be considered a single employer. As a single employer, Adecco would be "subject to joint liability for employment-related acts." *Laurin*, 2004 WL 513999, at *4. No reasonable jury, however, could find on this record that Adecco and Platform were the same entity or that Adecco was part of a single-integrated enterprise with Platform, such that the two entities could be considered a single employer.

Adecco's undisputed evidence shows that it is a separate entity that had a business relationship with Platform. (Crothall Aff. ¶ 7). Additionally, Lima has presented no evidence showing "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial support" between Platform and Adecco. *Laurin*, 2004 WL 513999, at *4 (discussing factors). Indeed, other than his appearing to use the terms Adecco and Platform interchangeably in his declaration and brief, Lima presents no evidence about the relationship between Platform and Adecco. Accordingly, Lima fails to raise a genuine issue of material fact regarding his assertion that Adecco and Platform are the same entity or a single employer. Adecco may not be held liable for the alleged discrimination under a single employer theory.

Accordingly, the complaint against Adecco must be dismissed, as no reasonable jury could find in Lima's favor on the question of Adecco's liability.

#### CONCLUSION

For the foregoing reasons, Adecco's summary judgment motion is granted and the complaint is dismissed. The Clerk of

the Court shall enter judgment accordingly, with costs but without attorneys' fees.

SO ORDERED.